**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 08-4492

DEMONTRELL WILLIAMS WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:04-cr-00106-FDW-1)

Argued: May 15, 2009

Decided: July 6, 2009

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Motz and Judge Duncan joined.

## COUNSEL

**ARGUED:** Mark Patrick Foster, Jr., LAW OFFICES OF MARK FOSTER, PC, Charlotte, North Carolina, for Appellant. Adam Christopher Morris, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appel-

lee. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

## OPINION

KING, Circuit Judge:

The Armed Career Criminal Act (the "ACCA") provides that a defendant convicted of an 18 U.S.C. § 922(g) firearm offense shall be imprisoned for "not less than fifteen years" if he has three previous violent felony convictions. 18 U.S.C. § 924(e). In this case, Demontrell Williams White pleaded guilty in the district court to being a felon in possession of a firearm, in contravention of § 922(g)(1). At sentencing, the court determined that White had three previous violent felony convictions and was thus an armed career criminal. As a result, the court applied the ACCA and sentenced White to fifteen years in prison. White's sole appellate contention is that the North Carolina offense underlying one of his previous convictions — conspiracy to commit robbery with a dangerous weapon — does not constitute a "violent felony" under the ACCA. As explained below, we reject this contention and affirm.

### I.

On April 29, 2004, White was indicted in the Western District of North Carolina for being a felon in possession of a firearm, in contravention of 18 U.S.C. § 922(g)(1), and for possessing a stolen firearm, in violation of § 922(j). White pleaded guilty on April 19, 2006, to both charged offenses. On August 4, 2007, the probation officer filed a presentence report ("PSR"), designating White as an armed career criminal under the ACCA. One of the three previous convictions contributing to this designation was White's 1999 conviction for the North Carolina offense of conspiracy to commit rob-

bery with a dangerous weapon. The district court subsequently declined to accept White's guilty pleas because the plea agreement failed to contemplate the applicability of the ACCA. Thereafter, on January 4, 2008, White again pleaded guilty to the § 922(g)(1) felon-in-possession offense, and the stolen firearm charge was dismissed.

On January 16, 2008, the probation officer filed a revised PSR with the district court, again designating White as an armed career criminal under the ACCA. On April 12, 2008, White objected to the PSR on the ground that a conspiracy to commit robbery with a dangerous weapon under North Carolina law is not a violent felony. The court denied this objection during its April 15, 2008 sentencing hearing, ruling from the bench that "a conspiracy to commit armed robbery is just as dangerous and confrontational . . . as the substantive crime of armed robbery itself." J.A. 65.[1] The court also explained that "a conspiracy to commit an armed robbery is [a] dangerous type of crime that creates [a] serious potential risk of physical injury to another." *Id.* at 66. Accordingly, the court sentenced White under the ACCA to fifteen years in prison.[2]

On April 30, 2008, White filed a timely notice of appeal. We possess jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.

White's sole appellate contention is that the North Carolina offense of conspiracy to commit robbery with a dangerous weapon (the "Conspiracy Offense") is not a "violent felony" under the ACCA. We review this contention de novo. *See United States v. Thornton*, 554 F.3d 443, 445 (4th Cir. 2009).

---

[1]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2]Absent the ACCA ruling, White's advisory Sentencing Guidelines range would have been 168 to 210 months. Thus, the ACCA increased the lower level of his Guidelines range by twelve months.

## A.

Before assessing White's contention that the Conspiracy Offense does not constitute an ACCA violent felony, we begin with an overview of the pertinent legal principles. More specifically, we discuss the elements of the Conspiracy Offense, the requirements of the ACCA, and the controlling decisions of the Supreme Court of the United States.

## 1.

In North Carolina, the offense of criminal conspiracy originated with, and is defined by, the common law. *See* N.C. Gen. Stat. § 4-1 (incorporating common law into North Carolina criminal law); *see also State v. Howard*, 40 S.E. 71, 74-75 (N.C. 1901) (tracing common law origins of criminal conspiracy offense). North Carolina defines a criminal conspiracy — a partnership in crime — as "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means." *State v. Gibbs*, 436 S.E.2d 321, 347 (N.C. 1993) (internal quotation marks omitted); *State v. Conrad*, 168 S.E.2d 39, 43 (N.C. 1969) (describing criminal conspiracy as "a partnership in crime"). In order to be convicted of a North Carolina conspiracy offense, a defendant must be shown to have "entered into an unlawful confederation for the criminal purposes alleged." *State v. Massey*, 334 S.E.2d 71, 72 (N.C. Ct. App. 1985). According to the pattern jury instructions for criminal prosecutions in North Carolina, there are three essential elements of such a conspiracy offense: (1) "that the defendant and [another] entered into an agreement"; (2) "that the agreement was to commit [a crime]"; and (3) "that the defendant and [his coconspirator(s)] intended that the agreement be carried out at the time it was made." N.C.P.I. - Crim. 202.80 (2001).[3] As the

---

[3]The North Carolina Pattern Jury Instructions are promulgated by the North Carolina Conference of Superior Court Judges, and they are predicated on legal principles derived from decisions of the Supreme Court of

pattern instructions reflect, the commission of an overt act is not an essential element of a North Carolina criminal conspiracy. *See Gibbs*, 436 S.E.2d at 347 ("As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed." (internal quotation marks omitted)).

Although the Conspiracy Offense is a common law offense, its object — robbery with a dangerous weapon — is statutorily defined. *See* N.C. Gen. Stat. § 14-87.[4] The three essential elements of the North Carolina offense of robbery with a dangerous weapon are the following: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened." *State v. Faison*, 411 S.E.2d 143, 149 (N.C. 1991) (internal quotation marks omitted).

2.

The ACCA defines what constitutes a "violent felony" in 18 U.S.C. § 924(e)(2)(B). First, under clause (i) of that provision, a violent felony is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Second,

North Carolina. Although the North Carolina courts are not obliged to always utilize the pattern instructions, it is "recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *State v. Sexton*, 571 S.E.2d 41, 45 (N.C. Ct. App. 2002) (internal quotation marks omitted).

[4]The North Carolina statutory offense of robbery with a dangerous weapon, which is the object of the Conspiracy Offense, is committed when

[a]ny person . . . who, having in possession or with the use or threatened use of any firearm[ ] or other dangerous weapon . . . whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another.

N.C. Gen. Stat. § 14-87.

pursuant to clause (ii) of that same provision, a violent felony "is a burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii). In assessing whether an offense constitutes an ACCA violent felony, we are obliged to utilize a categorical approach, under which the offense is analyzed generically — that is, by relying solely on its essential elements, rather than on the particular underlying facts. *See James v. United States*, 550 U.S. 192, 208 (2007); *Taylor v. United States*, 495 U.S. 575, 600 (1990) (explaining that categorical approach requires "looking only to the fact of conviction and the statutory definition of the predicate offense, rather than to the particular underlying facts").

Applying a categorical analysis to the Conspiracy Offense, we first observe that it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Furthermore, the Conspiracy Offense is not among the four enumerated offenses of § 924(e)(2)(B)(ii) — burglary, arson, extortion, or an offense involving the use of explosives. Thus, we must assess only one issue — the potential applicability of the "residual provision" of clause (ii). In other words, we must decide whether the Conspiracy Offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii).

3.

In its *James* decision in 2007, the Supreme Court recognized that the crime of attempted burglary, as defined by Florida law, qualified as a violent felony under the residual provision of § 924(e)(2)(B)(ii). *See* 550 U.S. at 211-12. In making that determination, the Court assessed "whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses — here, completed burglary." *Id.* at 203. The Court explained that,

"[a]s long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision." *Id.* at 209. Because an attempted burglary "poses the same kind of risk" as a burglary, the Court held that the Florida offense of attempted burglary was encompassed within the clause (ii) residual provision, and thus constituted a violent felony under the ACCA. *Id.* at 203.

A year after *James*, the Court refined the ACCA "violent felony" analysis by its decision in *Begay v. United States*, 128 S. Ct. 1581 (2008). There, the Court held that the New Mexico offense of driving under the influence ("DUI") did not constitute a violent felony under § 924(e)(2)(B)(ii)'s residual provision. *See Begay*, 128 S. Ct. at 1588. The Court recognized that the residual provision encompasses only those crimes "that are roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses of clause (ii). *Id.* at 1585. Expanding the inquiry that it made in *James*, the Court explained that — in addition to comparing degrees of risk — the conduct underlying the offense in question must be compared to the conduct required by the clause (ii) enumerated offenses, each of which "typically involve[s] purposeful, violent, and aggressive conduct." *Id.* at 1586 (internal quotation marks omitted). "[B]y way of contrast," crimes that "typically do not insist on purposeful, violent, and aggressive conduct" are not roughly similar in kind to the enumerated offenses. *Id.* Ultimately, the Court concluded that the New Mexico DUI offense was "simply too unlike the [enumerated] examples" to constitute a violent felony. *Id.* at 1584.

The *Begay* Court stressed that the ACCA had been enacted to target "the special danger created when a particular type of offender — a violent criminal or drug trafficker — possesses a gun." *Begay*, 128 S. Ct. at 1587. As the Court explained, when a defendant has been previously convicted of three violent felonies, those earlier offenses "reveal a degree of callousness toward risk" and "an increased likelihood that the

offender is the kind of person who might deliberately point the gun and pull the trigger." *Id.* "[S]uch crimes," the Court emphasized, "are characteristic of the armed career criminal, the eponym of the statute." *Id.* at 1586 (internal quotation marks omitted).

We recently applied the *Begay* test in *United States v. Thornton*, where we concluded that the crime of "carnal knowledge of a minor" in Virginia was not a violent felony within the scope of § 924(e)(2)(B)(ii)'s residual provision. *See* 554 F.3d at 449. Under Virginia's carnal knowledge statute, an accused is guilty if he "carnally knows, *without the use of force*, a child thirteen years of age or older but under fifteen years of age." Va. Code § 18.2-63(A) (emphasis added). We ruled that the carnal knowledge offense was simply "not sufficiently 'similar, in kind as well in degree of risk posed'" to the enumerated offenses of clause (ii). *Thornton*, 554 F.3d at 449 (quoting *Begay*, 128 S. Ct. at 1585). The degree of risk presented by the carnal knowledge offense, we explained, was unlike the enumerated crimes because the offense did not create the "immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crime[ ]" itself. *Id.* Furthermore, we determined that the carnal knowledge offense was not similar "in kind" to the enumerated offenses, because it was not "purposeful, violent, and aggressive." *Id.*

Pursuant to the foregoing, we must decide whether, as a categorical matter, the Conspiracy Offense is "roughly similar, in kind as well as in degree of risk posed" to the enumerated offenses in clause (ii) of § 924(e)(2)(B). *Begay*, 128 S. Ct. at 1585; *see also Thornton*, 554 F.3d at 446. A roughly similar "degree of risk" means that the prior crime, like the enumerated offenses, creates an "immediate, serious, and foreseeable physical risk[ ] that arise[s] concurrently with the commission of the crime[ ]" itself. *Thornton*, 554 F.3d at 449; *see also James*, 550 U.S. at 209. In order to be deemed similar "in kind," the Conspiracy Offense must categorically involve

conduct that is "purposeful, violent, and aggressive" — the common characteristics of the enumerated offenses in clause (ii). *Begay*, 128 S. Ct. at 1586; *see also United States v. Roseboro*, 551 F.3d 226, 234 (4th Cir. 2009) ("[T]he proper inquiry focuses on the similarity between the prior crime and the enumerated [offenses], asking whether the prior crime involved purposeful, violent, and aggressive conduct.").

## B.

White contends on appeal that, absent an overt-act element, the Conspiracy Offense requires only "a mere agreement to commit an armed robbery." Br. of Appellant 9. According to White, such an agreement "carries no . . . inherent risk of confrontation, [and no] serious potential risk of physical injury to another [is] presented by the [Conspiracy Offense]." *Id.* White thus maintains that the Conspiracy Offense "does not qualify as a 'violent felony' under Section 924(e)(2)(B)." *Id.* at 11. As a result, White predicates his contention on *James*'s "degree of risk" inquiry alone, without seeking to show that the Conspiracy Offense also fails to satisfy the "in kind" inquiry required by *Begay*. Nonetheless, pursuant to *Begay*, we are obliged to consider both inquiries — degree of risk and in kind — as each must be satisfied for the Conspiracy Offense to constitute a violent felony under the ACCA.

### 1.

First of all, we reject White's contention that, absent an overt-act element, the Conspiracy Offense categorically fails to present a degree of risk of physical harm that is similar to the risks posed by the enumerated offenses of clause (ii). Notably, North Carolina mandates that a conspiratorial agreement be directed *to the accomplishment of a criminal act* — in this case, robbery with a dangerous weapon. *Cf. Iannelli v. United States*, 420 U.S. 770, 777 (1975) (explaining that "an agreement to commit an unlawful act" is "the essence" of criminal conspiracy); *United States v. Ward*, 171 F.3d 188,

192 (4th Cir. 1999) ("Before one may be convicted of a conspiracy charge, it must always be asked: 'conspiracy to do what?'"). Although White seeks to downplay the degree of risk posed by referring to the Conspiracy Offense as a "mere agreement to commit an armed robbery," we are unable to so easily dismiss the nature of the conspirators' objective. Moreover, White misapprehends the fact that a successful conspiracy prosecution in North Carolina requires proof that the conspirators specifically "intended that the agreement be carried out." N.C.P.I. – Crim. 202.80 (2001).

Put succinctly, the Conspiracy Offense presents an immediate, serious, and foreseeable physical risk that arises concurrently with the formation of the conspiracy. When conspirators have formed a partnership in crime to achieve a violent objective, and when they intend to achieve that object, they have substantially increased the risk that their actions will result in serious physical harm to others. *Cf. United States v. Chimurenga*, 760 F.2d 400, 404 (2d Cir. 1985) ("Because the conspiracy itself provides a focal point for collective criminal action, attainment of the conspirators' objectives becomes . . . a significant *probability*.").[5] Additionally, a previous conviction on the Conspiracy Offense reveals a callousness toward risk and an increased likelihood of future violent conduct by an offender — conduct that the ACCA was intended to interdict. *See Begay*, 128 S. Ct. at 1587. Thus, the Conspiracy Offense presents a degree of risk — consistent with *James* and *Begay* — similar to that presented by the enumerated offenses of clause (ii).[6]

---

[5]White has acknowledged — and we agree — that the substantive North Carolina offense of robbery with a dangerous weapon is a violent felony under the ACCA.

[6]Notably, the Sentencing Commission has determined that "crimes of violence," for purposes of a sentencing enhancement, "include the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." USSG § 4B1.2 cmt. n.1 (2008) (emphasis added). The Commission's judgment, as the Supreme Court has explained, was premised on its

2.

Second, the Conspiracy Offense is similar "in kind" to the enumerated offenses of § 924(e)(2)(B)(ii), because its completion requires conduct that is "purposeful, violent, and aggressive." *Begay*, 128 S. Ct. at 1586. In deciding whether the criminal conduct underlying the Conspiracy Offense is categorically "purposeful," we must identify the Offense's required level of culpability. *See id.* (relying on examples of specific intent crimes to define "purposeful"). Put simply, a North Carolina criminal conspiracy is necessarily purposeful, as the prosecution is obliged to prove that the conspirators specifically intended to achieve the object of the conspiracy. *See State v. Weaver*, 473 S.E.2d 362, 368 (N.C. Ct. App. 1996) (recognizing that conspiracy to commit robbery with a dangerous weapon requires specific intent); *see also* Model Penal Code § 2.02(a) (2001) ("A person acts purposely when . . . it is his conscious object to engage in conduct of that nature . . . ."); *id.* § 5.03 (requiring conspirators to agree "with the purpose of promoting or facilitating" commission of object offense).

Next, we must examine *Begay*'s requirement that the felony offense in question be "violent." *See Black's Law Dictionary* 1601 (8th ed. 2004) (defining "violent" as "[r]esulting from extreme or intense force" and as "[v]ehemently or passionately threatening"). This element of the *Begay* analysis is the most difficult issue in this case because, under North Carolina law, the Conspiracy Offense is complete when its three elements have been satisfied. We nevertheless conclude that

---

analysis of "empirical sentencing data and presumably reflects an assessment that [aiding and abetting, conspiracy, and attempt offenses] often pose a similar risk of injury as completed offenses." *James*, 550 U.S. at 206. Although a "crime of violence" under the Guidelines may not necessarily equate to a "violent felony" under the ACCA, the view of the Commission reinforces the proposition that a conspiracy offense and its object may present similar risks of potential physical harm.

the essential conduct underlying the Conspiracy Offense is categorically violent. The Conspiracy Offense cannot be divorced from its violent objective — robbery with a dangerous weapon. *See Ward*, 171 F.3d at 193 (recognizing that, in assessing whether an offense is a "crime of violence" under the Sentencing Guidelines, "a sentencing court can go beyond the general elements of a criminal conspiracy statute to determine whether a violent felony was the object of the conspiracy"). A conspirator in the Conspiracy Offense necessarily intends to achieve the object of the agreement: robbery of the victim with a dangerous weapon.[7] And, by entering into a criminal partnership to commit such a violent crime, conspirators render acts of violence — and the participation of multiple offenders — much more likely. The Conspiracy Offense thus poses "a threat to the public over and above the threat of the commission of the relevant substantive crime — both because the '[c]ombination in crime makes more likely the commission of [other] crimes' and because it 'decreases the probability that the individuals involved will depart from their path of criminality.'" *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003) (quoting *Callanan v. United States*, 364 U.S. 587, 593-94 (1961)); *see also United States v. Rabinowich*, 238 U.S. 78, 88 (1915) ("For two or more to confederate and combine together to commit . . . a breach of the criminal laws, is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime.").

---

[7]The Conspiracy Offense is readily distinguishable from the carnal knowledge offense analyzed in our *Thornton* case. Because the carnal knowledge offense was necessarily committed "without the use of force," Va. Code § 18.2-63(A), we emphasized in *Thornton* that "the Virginia carnal knowledge offense, by definition, categorically does not involve the use of force and does not support an inference that any or all instances of the offense are violent and aggressive." 554 F.3d at 448-49. Thus, whereas the Conspiracy Offense requires proof that the conspirators specifically intended to use force, the Virginia carnal knowledge statute specified that force could not have been used.

Finally, we must assess whether the Conspiracy Offense — as contemplated by the *Begay* analysis — is an aggressive criminal act. *See Begay*, 128 S. Ct. at 1586 (relying on examples of offenses against the person, as well as physically risky crimes against property, to define "aggressive"); *see also Webster's Third New International Dictionary* 41 (1976) (defining aggressive conduct as "marked by combative readiness or bold determination"). The Conspiracy Offense requires, as an essential element, that the conspirators agree to use a dangerous weapon to accomplish an armed robbery — an offense against the person. The conspirators' intent to achieve such a violent object is thus "marked by combative readiness or bold determination" against the person of another, rendering their crime categorically aggressive.

## III.

In these circumstances, we agree with the district court that the Conspiracy Offense "is [a] dangerous type of crime that creates [a] serious potential risk of physical injury to another." J.A. 66. Furthermore, the Conspiracy Offense requires conduct that is similar "in kind" to the enumerated offenses of clause (ii) of § 924(e)(2)(B). The imposition of an ACCA sentence was therefore warranted, and we must reject White's contention and affirm.

*AFFIRMED*