KING, Circuit Judge,
dissenting:
With great respect for my fine colleagues of the majority, I strongly disagree with their decision in this case. I write separately in dissent for several reasons. First, the majority errs in deciding that North Carolina General Statute § 14-202.1 (the “Indecent Liberties Statute,” or the “Statute”) delineates two distinct crimes, thereby justifying its application of the “modified categorical approach” to the ACCA issue. Second, the majority errs in ruling that Vann “necessarily” violated the second prong — subsection (a)(2) — of the Indecent Liberties Statute. And third, the majority errs in classifying subsection (a)(2) as a “violent felony” under the ACCA, which it accomplishes by ignoring applicable precedent and misconstruing the Statute.
I.
In assessing whether a prior conviction qualifies as an ACCA predicate offense, the federal courts are normally obliged to employ the “categorical approach,” looking only to the existence of a conviction and the statutory definition of the earlier offense. See Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The focus in a proper ACCA analysis is on whether the statutory elements justify classifying the earlier offense as an ACCA predicate crime, and not on the factual underpinnings of the particular conviction. See James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).[1] In some instances, *443 the statute of conviction may include separate generic crimes — for example, failure to report as well as escape, or burglary of a residence as well as burglary of a vehicle. See Chambers v. United States, — U.S. -, 129 S.Ct. 687, 690-91, 172 L.Ed.2d 484 (2009). In this “narrow range of cases,” a court is entitled to “go beyond the mere fact of conviction” to determine which portion of the statute — that is, which crime — “necessarily” underlies the conviction. Taylor, 495 U.S. at 602, 110 S.Ct. 2143; see United States v. Rivers, 595 F.3d 558, 562 (4th Cir.2010); United States v. Woods, 576 F.3d 400, 404 (7th Cir.2009). This narrow exception to the categorical approach is known as the “modified categorical approach.” See United States v. Harcum, 587 F.3d 219, 223 (4th Cir.2009) (internal quotation marks omitted).
In concluding that a violation of the Indecent Liberties Statute constitutes a violent felony under the ACCA, the majority theorizes that the Statute “does in fact contain phrases that cover two different generic crimes” — “[o]ne requires physical acts against the body of a child, and the other does not.” Ante at 436.[2] According to the majority, subsection (a)(1) is a broad provision “prohibiting a wide range of criminally inappropriate behavior,” including sexually explicit telephone conversations, photographing unclothed children, and masturbating in a child’s presence. Id. at 436. By contrast, the majority erroneously perceives subsection (a)(2) as “requirting] a physical act upon or with the body of the victim,” and thus detailing a crime that is “conceptually separate and distinct from the crimes covered by [subsection (a)(1) ].” Id. at 436 (emphasis omitted). From this misperception of North Carolina law, the majority concludes that it “may employ the modified categorical approach” to determine, in the context of Vann’s three contested convictions, whether he was convicted of violating subsection (a)(2) and, if so, whether subsection (a)(2) is a violent felony under the ACCA. Id.
The fundamental error in the majority’s analysis is that it ignores North Carolina’s interpretation of the Indecent Liberties Statute. North Carolina’s conception of its own statute is paramount, for in conducting a proper ACCA analysis we must apply the Statute as it has been defined and interpreted by the North Carolina courts. See Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1269, 176 L.Ed.2d 1 (2010) (explaining that, in conducting ACCA analysis, “[w]e are ... bound by the [state] Supreme Court’s interpretation of state law, including its determination of the elements of [the pertinent statute]”); James, 550 U.S. at 202, 127 S.Ct. 1586 (beginning ACCA analysis “by examining what constitutes attempted burglary under Florida law”); United States v. Bethea, 603 F.3d 254, 257 (4th Cir.2010) (explaining that, in determining if modified categorical approach is appropriate, “we look to how [the] elements are defined by statute and by the state’s supreme court”). To be sure, one of the basic tenets of our federal system is that a federal court is not empowered “to place a *444 construction on a state statute different from the one rendered by the highest court of the State.” Johnson v. Fankell, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997). As Justice Stevens explained therein, for the unanimous Court, “[t]his proposition [is] fundamental to our system of federalism.” Id.
It is vitally significant that, in enacting the Indecent Liberties Statute, North Carolina chose not to “distinguish between the types of indecent liberties,” State v. Jones, 99 N.C.App. 412, 393 S.E.2d 585, 589 (1990), and instead made “[t]he crime of indecent liberties ... a single offense,” State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 180 (1990); see also State v. Jones, 172 N.C.App. 308, 616 S.E.2d 15, 20 (2005) (rejecting proposition that “[subsections (a)(1) and (a)(2) are separate criminal offenses with different elements” (emphasis omitted)). Indeed, although theoretically distinguishable, the Statute’s two subsections have been treated interchangeably by the North Carolina courts. See, e.g., State v. Strickland, 77 N.C.App. 454, 335 S.E.2d 74, 76 (1985) (utilizing language of subsections (a)(1) and (a)(2) in explaining that “[t]he liberty that defendant willfully took with the boys ... in exposing his lewd and lascivious activity to them and inviting their participation was certainly indecent, immoral and improper”). In order to prove an offense under the Statute, the State must establish five elements:
(1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.
State v. Coleman, 684 S.E.2d 513, 519 (N.C.Ct.App.2009) (internal quotation marks omitted). According to North Carolina’s courts, the Statute provides “disjunctively two alternative means of proving one element of the offense of indecent liberties.” Jones, 616 S.E.2d at 20.[3]
More specifically, the Indecent Liberties Statute’s two subsections provide alternative conduits for establishing that the activity was “for the purpose of arousing or gratifying sexual desire,” with such a purpose being “assumed” in the context of lewd and lascivious acts. See State v. Wilson, 87 N.C.App. 399, 361 S.E.2d 105, 108 (1987) (internal quotation marks omitted). As either theory can establish culpability, the North Carolina courts have recognized that the same behavior can be prosecuted under either subsection, see, e.g., State v. Banks, 322 N.C. 753, 370 S.E.2d 398, 407 (1988) (prosecuting “acts of kissing” under subsections (a)(1) and (a)(2)), and, in assessing the ambit of one of the Statute’s subsections, those state courts have frequently relied on decisions that involve the *445 companion subsection, see, e.g., State v. Every, 157 N.C.App. 200, 578 S.E.2d 642, 647-48 (2003) (relying, in appeal under subsection (a)(1), on prior decision involving subsection (a)(2)). Significantly, the very criminal acts that the majority now suggests are prohibited only by subsection (a)(1) — “photographing an unclothed child in a sexually suggestive position [and] masturbating in front of a child,” ante at 436 (internal quotation marks omitted)— have actually been prosecuted and punished under subsection (a)(2). See State v. Hammett, 182 N.C.App. 316, 642 S.E.2d 454, 459 (2007) (prosecuting masturbation in another’s presence under subsection (a)(2)); State v. Turman, 52 N.C.App. 376, 278 S.E.2d 574, 575 (1981) (same; subsection (a)(1)); State v. McClees, 108 N.C.App. 648, 424 S.E.2d 687 (1993) (prosecuting videotaping of disrobing teenager under subsection (a)(1)); State v. Kistle, 59 N.C.App. 724, 297 S.E.2d 626 (1982) (prosecuting photographing of unclothed child under subsection (a)(2)). Moreover, contrary to the majority’s interpretation of subsection (a)(2) as requiring a “physical act[ ],” ante at 436 — presumably some act of touching — the North Carolina courts have ruled that neither subsection (a)(1) nor subsection (a)(2) requires a touching. See Hammett, 642 S.E.2d at 459 (rejecting contention “that, in order to be convicted under [subsection (a)(2) ], the accused must physically touch the victim”); Every, 578 S.E.2d at 648 (recognizing that subjection (a)(1) does not require touching).
Put most simply, the Indecent Liberties Statute proscribes only one generic crime: the taking of indecent liberties with a child. See Jones, 616 S.E.2d at 20 (explaining that “ ‘[t]he crime of indecent liberties is a single offense’ ” and rejecting proposition that subsections have different elements).[4] Therefore, in analyzing the Statute, we should, as my friend Judge Niemeyer explained in an earlier decision, simply apply the “categorical approach, which takes into account only the definition of the offense and the fact of conviction.” United States v. Pierce, 278 F.3d 282, 286 (4th Cir.2002) (analyzing Statute for career offender purposes). And under that approach — as the majority implicitly acknowledges — a violation of the Statute does not constitute a “violent felony” under the ACCA because it is not similar in kind or in degree of risk to the ACCA enumerated crimes of arson, burglary, extortion, and offenses involving explosives. See ante at 436 (recognizing breadth of Statute); see also Every, 578 S.E.2d at 647 (concluding that “the utterance of ‘mere words’ ” constitutes indecent liberty).
II.
The majority has compounded its initial error — determining that the Indecent Liberties Statute proscribes two distinct crimes — by finding that Vann, in each of his three underlying convictions, “necessarily” contravened subsection (a)(2) of the Statute. It is far from clear, however, that Vann pleaded guilty to violating subsection (a)(2), which the majority presents as the more egregious of what it deems to be the Statute’s two alternative offenses.
A.
The Supreme Court has specified the restricted parameters of the inquiry into whether a conviction qualifies as an ACCA *446 violent felony. In 1990, in Taylor v. United States, the Supreme Court explained the limited circumstances where a court may “go beyond the mere fact of conviction” in assessing ACCA applicability, namely the “narrow range of cases where a jury was actually required to find all the elements of [a] generic [qualifying offense].” 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). As the Court explained (by way of example), “in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict,” the earlier conviction would qualify as an ACCA predicate offense. Id.
Fifteen years later, in Shepard v. United States, the Court extended the Taylor rationale to convictions obtained by way of guilty pleas. See 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). In so doing, the Court “adhere[d] to the demanding requirement that any sentence under the ACCA rest on a showing that a prior conviction ‘necessarily’ involved (and a pri- or plea necessarily admitted) facts equating to [a predicate offense],” id. at 24, 125 S.Ct. 1254, recognizing that constitutional concerns “counselled] [the Court] to limit the scope of judicial factfinding on the disputed generic character of a prior plea,” id. at 25-26, 125 S.Ct. 1254. Accordingly, the Shepard Court restricted the ACCA inquiry to whether an earlier guilty plea “necessarily admitted elements of the generic offense,” as demonstrated by the terms of the plea agreement, the terms of the charging document, the transcript of the plea colloquy in which the defendant confirmed the factual basis for the plea, or “some comparable judicial record of this information.” Id. at 26, 125 S.Ct. 1254. The Shepard Court elaborated upon this rationale as follows: when the statute requires no finding of a generic qualifying crime, “the only certainty of a generic finding” when the charging document does not narrow the charge to generic limits, is in the jury instructions, bench-trial findings and rulings, or, in the context of a guilty plea, “the defendant’s own admissions or accepted findings of fact confirming the factual basis for a valid plea.” Id. at 25,125 S.Ct. 1254.
The Shepard decision thus establishes the parameters of the ACCA-related inquiry in a pleaded case. Importantly, though, it also demonstrates the degree of certainty that is required for a prior conviction to qualify under this “restricted look.” 544 U.S. at 23, 125 S.Ct. 1254. The charging documents at issue in Shepard recited the pertinent burglary statute, which encompassed burglaries of buildings as well as vehicles, and listed the residential address where the offense occurred. See Shepard, 544 U.S. at 31-32, 125 S.Ct. 1254 (O’Con-nor, J., dissenting). The Shepard Court, however, observed that “the record is silent on the generic element [namely, whether it was burglary of a building], there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact.” 544 U.S. at 25, 125 S.Ct. 1254. Because of the failure to satisfy this generic requirement, Shepard’s earlier burglary convictions were not ACCA predicate offenses.
B.
By contrast, the majority today determines that Vann “necessarily” pleaded guilty to violating subsection (a)(2) of the Statute — a determination predicated on the descriptions of his prior convictions in the presentence report (the “PSR”), which were either made “[a]ccording to the indictment” or derived from “court records,” and by the use of the word “and” in delineating the charges in those descriptions *447 and the charging documents. See ante at 437-38 (internal quotation marks and emphasis omitted). Such reliance is entirely undermined, however, by the legal principles generally applicable to charging documents (such as indictments).
First, it is established that a charging document must allege conjunctively the disjunctive components of an underlying statute. See State v. Armstead, 149 N.C.App. 652, 562 S.E.2d 450, 452 (2002) (“Where a statute sets forth disjunctively several means or ways by which the offense may be committed, a warrant thereunder correctly charges them conjunctively.” (internal quotation marks omitted)); see also United States v. Rhynes, 206 F.3d 349, 384 (4th Cir.1999) (“Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive.”).[5] As a result, that Vann’s earlier charging documents apparently use the conjunctive term “and,” rather than the disjunctive “or,” does not mean that Vann “necessarily” pleaded guilty to subsection (a)(2). It is also established that when a defendant is convicted under a conjunctively charged indictment, in the absence of a special verdict identifying the factual bases for conviction, a sentence cannot be imposed that exceeds the statutory maximum for the “least-punished” component, that is, the lesser of the disjunctive statutory objects. See Rhynes, 206 F.3d at 379-81.[6]
Moreover, this case presents a much weaker basis than in Shepard for determining the nature of Vann’s prior offenses. The charging documents merely recite the language of the Statute, provide the dates of the alleged offenses and identities of Vann and the minor, and aver that the age requirements were satisfied. Each charging document alleges a violation of the Statute, without specifying either subsection thereof. And, consistent with North Carolina law, each properly alleges the indecent liberties offense in conjunctive fashion. Similarly, each judgment simply specifies the file number, identifies the offense as “Indecent Liberties with Minor Child” or “Indecent Liberties with Child,” denotes the pertinent statute only as “14-202.1,” and recognizes that no written findings were made. From this weak reed, the majority somehow finds that Vann necessarily violated subsection (a)(2) of the Statute.
*448 C.
In view of the foregoing, the majority’s “finding” that each of Vann’s three contested convictions violated subsection (a)(2) of the Statute is erroneous in multiple respects. Most basically, it contravenes the settled principle that appellate courts do not make factual findings. See Robinson v. Wix Filtration Corp., 599 F.3d 403, 418-19 (4th Cir.2010) (King, J., dissenting); see also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 575-76 (4th Cir.1995) (“It is a basic tenet of our legal system that, although appellate courts often review facts found by a judge or jury ..., they do not make such findings in the first instance.”). Further, it is at best disingenuous to “conclude that the issue” “of whether we can consider state charging documents not made part of the record in the district court” “has been resolved in our circuit.” Ante at 438 n. 3. It is one thing for a federal court to look at a state court docket in assessing jurisdiction over a removed case, or to note a subsequent arson conviction in determining the propriety of rescinding a fire insurance settlement offer. See id. (citing Lolavar v. de Santibanes, 430 F.3d 221 (4th Cir.2005); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236 (4th Cir.1989)). It is materially different to rest a sentencing decision — affirming the transformation of a ten-year maximum into a fifteen-year minimum — on the basis of evidence never presented to the district court, particularly when such evidence was not requested until after oral argument.[7]
Moreover, it bears emphasis that the basis of the majority’s conclusion that Vann’s convictions “necessarily” rest on subsection (a)(2) is that the charging documents simply recite the language of the Indecent Liberties Statute. Recently, however, we ruled that a conviction under a so-called Alford plea — where the defendant does not confirm the factual basis for the plea, see North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) — does not qualify as an ACCA predicate offense when the statutory definition contains both qualifying and non-qualifying predicate crimes and no other Shepard-approved documents establish the offense on which the defendant was convicted. United States v. Alston, 611 F.3d 219, 227-28 (4th Cir.2010). As Judge Niemeyer properly recognized in Alston, “Shepard prevents sentencing courts from assessing whether a prior conviction counts as an ACCA predicate conviction by relying on facts neither inherent in the conviction nor admitted by the defendant.” Id. at 226. Indeed, our opinion emphasized that the Alford plea “did not necessarily rest on facts establishing [Alston’s] second-degree assault offense as a type of assault that qualifies as a violent felony” and that, in accepting his plea, the trial court was not required to find such facts; therefore, “we [could not] say that the facts indicating the violent nature of the second-degree assault charge to which Alston tendered his plea are inherent in the fact of his conviction.” Id. at 227 (alteration and internal quotation marks omitted). Accordingly, we concluded that
the State’s proffer of the factual basis for Alston’s Alford plea, although necessary for the state court’s acceptance of the plea, cannot now establish, with the requisite certainty, that the conviction *449 for second-degree assault that followed Alston’s plea was a conviction for a violent felony under ACCA.
Id. at 228.
Under the Alston precedent, it is inappropriate for the majority to find that Vann “necessarily” pleaded guilty to the subsection of the Statute (subsection (a)(2)) that it deems a violent felony under the ACCA. See United States v. Bethea, 603 F.3d 254, 259 n. 7 (4th Cir.2010) (“Because the indictment specifies that Bethea escaped while waiting to appear in court, we recognize that the most plausible explanation for his specific conduct is that he fled custody, rather than that he simply failed to report. Under Shepard, however, we are charged with considering whether Bethea’s conduct was ‘necessarily’ violent, not whether his conduct was plausibly or even likely so.”). Indeed, to borrow the Taylor analogy utilized in Alston, if Vann had gone to trial in the underlying cases, any resulting conviction could only be used as an ACCA predicate offense if the jury had returned a special verdict (or answered an interrogatory) specifically convicting him of violating subsection (a)(2) of the Statute. See Alston, 611 F.3d at 228. Put simply, this situation is a far cry from the Taylor hypothetical, where the indictment specifically charged burglary of a dwelling. See 495 U.S. at 602, 110 S.Ct. 2143. Instead, the majority sees fit to engage in the very behavior the categorical approach is intended to avert: inappropriate judicial factfinding on appeal. See id. at 601, 110 S.Ct. 2143 (explaining that categorical approach avoids difficulty associated with pleaded cases in which “there often is no record of the underlying facts”); see also Nijhawan v. Holder, — U.S. -, 129 S.Ct. 2294, 2299, 174 L.Ed.2d 22 (2009) (explaining that categorical approach “avoids the practical difficulty of trying to ascertain in a later proceeding, perhaps from a paper record containing only a citation (say, by number) to a statute and a guilty plea, whether the offender’s prior crime did or did not involve, say, violence” (alteration, omission, and internal quotation marks omitted)).
III.
If the modified categorical approach could appropriately be used here, and if the PSR and charging documents indeed established that Vann was “necessarily” convicted of violating subsection (a)(2), his underlying convictions would yet fail to qualify as ACCA predicate offenses. Succinctly put, in concluding that a violation of subsection (a)(2) typically involves purposeful, violent, and aggressive conduct, the majority misconstrues the Statute and ignores applicable precedent.
The ACCA was enacted to target “the special danger created when a particular type of offender — a violent criminal or drug trafficker — -possesses a gun.” Begay v. United States, 553 U.S. 137, 146, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). As a result, the ACCA focuses on purposeful, violent, and aggressive crimes that are “potentially more dangerous when firearms are involved” — the type of crimes that are “characteristic of the armed career criminal, the eponym of the statute.” Id. at 145, 128 S.Ct. 1581 (internal quotation marks omitted). As the Supreme Court has emphasized, the ACCA targets criminal conduct related to “violent criminal use of firearms,” and not every crime that “can be said to present a serious potential risk of physical injury.” Id. at 147, 128 S.Ct. 1581 (internal quotation marks omitted); see also id. at 142, 128 S.Ct. 1581 (emphasizing that ACCA “covers only similar crimes [to arson, burglary, offenses involving explosives, and extortion], rather than every crime that ‘presents a serious potential risk of physical injury to another’ ” (quoting 18 U.S.C. § 924(e) (2) (B) (ii))). Accordingly, to qualify *450 as an ACCA predicate offense under the “residual provision” of § 924(e)(2)(B)(ii)— the clause at issue here — the predicate offense must be “ ‘roughly similar, in kind as well as in degree of risk posed,’ to the enumerated offenses.” United States v. White, 571 F.3d 365, 369 (4th Cir.2009) (quoting Begay, 553 U.S. at 143, 128 S.Ct. 1581).
A.
An appropriate assessment of the Indecent Liberties Statute and its treatment by the North Carolina courts demonstrates that a violation thereof is neither similar in kind nor similar in degree of risk to the crimes enumerated in the ACCA. To obtain a conviction under the Statute as initially enacted, prosecutors were obliged to prove the occurrence of an unnatural sexual act, such as incest or a crime against nature. State v. Banks, 322 N.C. 753, 370 S.E.2d 398, 407 (1988). In 1975, the North Carolina legislature revised the Statute, removing the requirement of an unnatural sexual act. See id. The resulting Statute “encompass[es] more types of deviant behavior” than North Carolina’s other sex-related statutes, in order to provide children “broader protection than available under [those] statutes.” State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673, 682 (1987). Accordingly, a variety of actions, performed at a variety of distances from a minor, are now prohibited by the Statute. See, e.g., State v. McClees, 108 N.C.App. 648, 424 S.E.2d 687, 689-90 (1993) (collecting cases and concluding that secretly videotaping disrobing teenager violates Statute). The scope of the Statute and the “breadth of conduct” it proscribes reflect North Carolina’s concern for the potential “psychological damage” indecent liberties can cause. State v. Every, 157 N.C.App. 200, 578 S.E.2d 642, 648 (2003).
As with such North Carolina statutes as “Opposite sexes occupying same bedroom at hotel for immoral purposes; falsely registering as husband and wife,” N.C. Gen. Stat. § 14-186, the Indecent Liberties Statute is classified as an offense against public morality and decency. See N.C. Gen.Stat. Ch. 14, Subch. VII (“Offenses against Public Morality and Decency”); cf. id., Subch. Ill (“Offenses against the Person”). Thus, “[i]ndecent liberties are defined as such liberties as the common sense of society would regard as indecent and improper.” McClees, 424 S.E.2d at 690 (internal quotation marks omitted). Moreover, as used in the Statute, “lewd” and “lascivious” are defined “according to their plain meaning in ordinary usage.” State v. Hammett, 182 N.C.App. 316, 642 S.E.2d 454, 458 (2007). The North Carolina courts define the terms “lewd” as “inciting to sensual desire or imagination” and “lascivious” as “tending to arouse sexual desire.” State v. Wilson, 87 N.C.App. 399, 361 S.E.2d 105, 108 (1987) (internal quotation marks omitted). Furthermore, the North Carolina courts have emphasized that one can take “indecent liberties with children” without being in the actual presence of the minor. See McClees, 424 S.E.2d at 689-90 (explaining implications of “with” in Statute). The breadth of the Statute has, not surprisingly, engendered numerous challenges on the grounds that it is unconstitutionally vague. See, e.g., State v. Elam, 302 N.C. 157, 273 S.E.2d 661, 664-65 (1981) (rejecting vagueness challenge); State v. Hicks, 79 N.C.App. 599, 339 S.E.2d 806, 808 (1986) (citing cases upholding Statute’s constitutionality); State v. Turman, 52 N.C.App. 376, 278 S.E.2d 574, 575 (1981) (rejecting vagueness and other constitutional challenges).
In assessing the Indecent Liberties Statute under the ACCA, reference to its companion statute, N.C. Gen.Stat. § 14-202.2 (entitled “Indecent liberties between children”), is helpful. The companion statute, which proscribes indecent liberties be *451 tween those aged sixteen and younger who are at least three years apart in age, is almost identical to the Statute. Nevertheless, a conviction obtained under § 14-202.2 — a misdemeanor — could not constitute an ACCA predicate offense because juvenile offenses only qualify if they involve the use of a firearm, knife, or destructive device. See 18 U.S.C. § 924(e)(2)(B). Given that the same behavior is proscribed by both statutes, the following hypothetical reveals the illogic of treating the Indecent Liberties Statute as a “violent felony” under the ACCA. Two children, one initially aged fifteen and the other eleven, engage in sexting (texting of sexually suggestive pictures) both before and after the elder’s sixteenth birthday. Qf. State v. Kistle, 59 N.C.App. 724, 297 S.E.2d 626 (1982) (taking sexually suggestive photograph constitutes subsection (a)(2) indecent liberty). The sexting incidents occurring prior to the elder’s sixteenth birthday cannot form the basis for an ACCA predicate offense, but such incidents on or subsequent to the child’s birthday, under the majority’s logic, are so violent, aggressive, and purposeful — so connected to the behavior of an armed career criminal — that they would be ACCA predicate offenses.
B.
Of course, the conclusion spelled out above is entirely illogical; it is also directly contrary to the Supreme Court’s warning that the ACCA does not cover every offense with a potential risk of injury. As we have explained, for purposes of an ACCA analysis, “[a] roughly similar degree of risk means that the prior crime, like the enumerated offenses, creates an immediate, serious, and foreseeable physical risk that arises concurrently with the commission of the crime itself.” White, 571 F.3d at 370 (alterations and internal quotation marks omitted). Moreover, “[i]n order to be deemed similar in kind, the [offense] must categorically involve conduct that is purposeful, violent, and aggressive — the common characteristics of the [ACCA] enumerated offenses.” Id. (internal quotation marks omitted). The majority, however, has failed to analyze the Statute against these essential criteria.
Just recently, in United States v. Thornton, we concluded that a conviction under Virginia’s statutory rape statute failed to qualify as an ACCA “violent felony.” 554 F.3d 443 (4th Cir.2009). In so ruling, we explained that “the risks of physical injury associated with adult-minor sexual activity” are insufficient to justify a defendant’s “classification as an armed career criminal,” and we rejected the proposition that the possibility of constructive force made the statutory rape offense similar to the ACCA enumerated crimes. Id. at 447-48.[8] In conducting our analysis, we were attentive to the Virginia Criminal Code, recognizing that its “structure shows that the Virginia General Assembly considers forcible and nonforcible sexual offenses to present different risks that are punishable in different ways.” Id. at 448. Explaining that the ACCA “enumerated crimes create immediate, serious, and foreseeable physi *452 cal risks that arise concurrently with the commission of the crimes themselves,” and acknowledging that “nonforcible adult-minor sexual activity can present grave physical risks to minors,” we recognized that “such risks are not sufficiently similar, in kind as well as in degree of risk posed to the examples of burglary, arson, extortion, and crimes involving explosives.” Id. at 449 (internal quotation marks omitted). Indeed, Judge Duncan emphasized that such a statutory rape conviction “is not associated with a likelihood of future violent, aggressive, and purposeful armed career criminal behavior and cannot constitute a violent felony under the ACCA.” Id. (internal quotation marks omitted).
Faithful application of our Thornton precedent illustrates the error of treating a North Carolina indecent liberties conviction as a violent felony. First, much of the justification for the majority’s position is the potential for psychological harm associated with indecent liberties. See also United States v. Pierce, 278 F.3d 282 (4th Cir.2002). Psychological harm, however, is insufficient under the ACCA: the predicate offense must “create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crime[ ]” itself. Thornton, 554 F.3d at 449; cf. Pierce, 278 F.3d at 291 (explaining that sexual touching “may not cause injury” and thus the “violence ... was not necessarily the touching”). Second, even a cursory examination of North Carolina’s criminal code reveals the enormity of the distinction between indecent liberties and sexual offenses, let alone forcible sexual offenses. North Carolina devotes a sub-chapter in its criminal code to “Offenses against the Person,” and has a specific article therein devoted to “Rape and Other Sex Offenses.” See N.C. Gen.Stat. Ch. 14, Subch. Ill, art. 7A. Within this article, North Carolina further differentiates between sex offenses committed by force, see id. § 14-27.3, second-degree rape (encompassing “vaginal intercourse ... [b]y force and against the will of the other person”), and those committed without force, see id. § 14-27.7, intercourse and sexual offenses with certain victims (providing “[cjonsent is not a defense to a charge under this section”), and § 14-27.7A, statutory rape (prohibiting intercourse except when parties are married). By contrast, the Indecent Liberties Statute is codified in the subchapter devoted to “Offenses against Public Morality and Decency,” immediately after the crime of “Secretly peeping into room occupied by another person,” id. § 14-202. See id., Subch. VII. It thus strains the bounds of credulity to classify indecent liberties as a violent felony when statutory rape, classified as an “Offense[ ] against the Person” and as a more serious felony than indecent liberties, fails to so qualify. See id. § 14-27.7A; see generally Thornton, 554 F.3d 443. That the same behavior could form the basis of a conviction under both statutes further illustrates the error of treating indecent liberties as a violent felony. See State v. Baker, 333 N.C. 325, 426 S.E.2d 73, 76 (1993) (explaining that sexual penetration can constitute indecent liberty, rape, and/or sexual offense).
C.
As I have emphasized, in conducting an ACCA analysis we are obliged — pursuant to settled principles of federalism — to consider whether the elements of a crime, as defined by state law, are such that it qualifies as an ACCA predicate offense. See Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1269, 176 L.Ed.2d 1 (2010); James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). Subsection (a)(2) proscribes “lewd” and “lascivious” acts, that is, behavior “inciting to sensual desire or imagination” or “tending to arouse sexual desire.” Wilson, 361 S.E.2d at 108 (internal quotation marks *453 omitted). The majority, however, fundamentally misconstrues subsection (a)(2), which properly provides that an individual (at least sixteen years of age and five years older than the minor) commits an indecent liberty if he “[wjillfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.” N.C. Gen.Stat. § 14-202.1(a)(2) (emphasis added). More specifically, the majority’s assessment that subsection (a)(2) “requires [a] physical ] act against the body of a child,” ante at 436, demonstrates a failure to fully appreciate the Indecent Liberties Statute’s “or with” language. In so doing, the majority fundamentally alters the character of the statutory prohibition because, under North Carolina law, both actual and constructive presence are denoted by use of the statutory term “with.” See, e.g., McClees, 424 S.E.2d at 689-90 (explaining that “with” encompasses both actual and constructive presence); Turman, 278 S.E.2d at 575 (“The word Svith’ is not limited to mean only a physical touching.”).
North Carolina has specifically rejected the assertion that a violation of (a)(2) requires the touching of a child, let alone “any sexual contact with the child’s body.” Kistle, 297 S.E.2d at 628; see Hammett, 642 S.E.2d at 459 (rejecting contention “that, in order to be convicted under [N.C. Gen.Stat.] § 14-202.1(a)(2), the accused must physically touch the victim”). Instead, the Indecent Liberties Statute encompasses a broader range of conduct than North Carolina’s sexual acts statutes, including those that specifically target “sexual contact with a child’s body,” such as “Rape of a child; adult offender,” N.C. Gen.Stat. § 14-27.2A, “Sexual offense with a child; adult offender,” id. § 14-27.4A, and “Statutory rape or sexual offense of a person who is 13, 14, or 15 years old,” id. § 14-27.7A. Accordingly, “masturbating in the presence of’ a minor “falls under the rubric of an activity covered by [N.C. Gen.Stat.] § 14-202.1(a)(2).” Hammett, 642 S.E.2d at 459. Further examples of subsection (a)(2) offenses include “french kissing,” whether merely attempted or actually consummated. See Banks, 370 S.E.2d at 407 (actual); Hammett, 642 S.E.2d at 458-59 (attempted). Indeed, simply photographing an unclothed child violates subsection (a)(2). See Kistle, 297 S.E.2d at 628 (rejecting contention that “the taking of a photograph of a child does not constitute the commission of a lewd and lascivious act upon or with the body, or a part or member thereof’). Because a violation of subsection (a)(2) clearly does not “create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crime[ ]” itself, it cannot constitute an ACCA predicate. Thornton, 554 F.3d at 449.[9]
D.
In my view, it is nonsensical to assert that a violation of the Indecent Liberties
*454 Statute — which mandates neither sexual acts nor the touching of a minor — is more violent than statutory rape, which specifically requires sexual acts with a minor. See ante at 441-42 (seeking to distinguish Virginia’s carnal knowledge statute and concluding that “a typical violation of the North Carolina statute is much more likely to be marked by violent and aggressive conduct than an ordinary violation of the Virginia statute considered in Thornton ”). It is also notable that the majority opinion is lacking in supporting authorities. See, e.g., id. at 441 (claiming, without support or elaboration, that indecent liberties offense is roughly similar in kind to enumerated offenses “in a way that the crime of driving under the influence at issue in Begay was not”); id. at 441 (speculating, absent authority, that “given the age differential and the resulting power disparity between the defendant and the child, the [indecent liberties] offense will naturally tend to involve coercive conduct that can readily escalate to physical violence”). Moreover, the majority’s resort to specific North Carolina cases in support of its contention that “a large number of [subsection (a)(2) ] violations involve the use of horrific force,” is unavailing. See id. at 441. It is the bedrock principle of the categorical approach that only the elements of the offense — rather than the factual circumstances of a specific violation — can be considered. See Nijhawan v. Holder, — U.S. -, 129 S.Ct. 2294, 2299, 174 L.Ed.2d 22 (2009) (explaining categorical approach, as distinct from circumstance-specific approach). One solid reason for the ban on considering the factual circumstances of a particular offense is that, “if a guilty plea to a lesser, [nonqualifying] offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to [a qualifying offense].” Taylor v. United States, 495 U.S. 575, 601-02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). It is likewise unfair to apply sentence enhancements simply because more heinous crimes often satisfy the elements of an earlier crime on which a defendant was convicted. See Baker, 426 S.E.2d at 76.
Thus, in assessing whether a violation of the Indecent Liberties Statute “typically” involves violent, aggressive, and purposeful conduct, we must examine the Statute itself, which is best exemplified by state court decisions involving only indecent liberties convictions — as opposed to those involving rape, murder, and incest, upon which the majority relies. Compounding the problematic nature of the majority opinion is that the “horrific” decisions upon which the majority relies involve violations of subsection (a)(1), rather than subsection (a)(2). See ante at 441; cf. State v. Rhodes, 321 N.C. 102, 361 S.E.2d 578, 580 (1987) (examining subsection (a)(1)); State v. Ridgeway, 185 N.C.App. 423, 648 S.E.2d 886, 895 (2007) (examining whether “purpose of arousing or gratifying sexual desire,” specified in subsection (a)(1), had been established); State v. Jones, 99 N.C.App. 412, 393 S.E.2d 585, 589-90 (1990) (discussing jury instruction on “immoral, improper or indecent liberty”).
To paraphrase Thornton, the Indecent Liberties Statute, including subsection (a)(2), is not “sufficiently similar to the enumerated crimes” of arson, burglary, extortion, and offenses involving explosives “in kind or in degree of risk to constitute a violent felony.” 554 F.3d at 449. Put simply, although a violation of subsection (a)(2) is reprehensible, it is not the violent, aggressive, and purposeful behavior associated with violent use of firearms and armed career criminals. Therefore, it does not constitute an ACCA predicate offense.
*455 IV.
Pursuant to the foregoing, I would rule that a violation of the Indecent Liberties Statute is not categorically a “violent felony” under the ACCA, and that the district court thus erred in treating Vann’s contested convictions as ACCA predicate offenses. As a result, I would vacate the judgment and remand for resentencing.
I respectfully dissent.

. In utilizing the categorical approach, as the Supreme Court has explained, a court must look to the “generic crime, say, the crime of fraud or theft in general,” rather than “the specific acts in which an offender engaged on a specific occasion.” Nijhawan v. Holder, U.S. -, 129 S.Ct. 2294, 2298, 174 L.Ed.2d 22 (2009).

. The Indecent Liberties Statute specifies that a person has taken indecent liberties with a child if that person is “16 years of age or more and at least five years older than the child in question,” and either:
(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire ["subsection (a)(1)”]; or
(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years ["subsection (a)(2)”].
N.C. Gen.Stat. § 14-202.1(a).

. The majority maintains that, because a violation of the Indecent Liberties Statute provides "disjunctively two alternative means of proving one element of the offense,” Jones 616 S.E.2d at 20, application of the modified categorical approach is somehow appropriate. See ante at 436-37 n. 1. To support its unwarranted conclusion, the majority relies on the Supreme Court's recent decision in Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), but ignores the fact that Johnson reiterated the Court’s precedent that the modified categorical approach is applicable only in those situations where a statute contains two or more different generic crimes. See Johnson, 130 S.Ct. at 1273. Because the Supreme Court of North Carolina has already concluded that the "crime of indecent liberties is a single offense," see Hartness, 391 S.E.2d at 180 (emphasis added)— rather than two separate generic crimes — the modified categorical approach simply is not applicable to violations of the Statute.

. In its opinion, the majority erroneously maintains that this dissenter has somehow "determine[d] that violating North Carolina's indecent liberties statute constitutes a single offense.” Ante at 436 n. 1. To the contrary, it is the Supreme Court of North Carolina, rather than this lone dissenter, that made such a determination, by explicitly recognizing twenty years ago that "[t]he crime of indecent liberties is a single offense.” State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 180 (1990).

. Indeed, a disjunctive charge in an indictment contravenes an accused’s constitutional rights. See, e.g., The Confiscation Cases, 20 Wall. 92, 87 U.S. 92, 104, 22 L.Ed. 320 (1874) (explaining that disjunctive charge is "wholly insufficient” and lacks "necessary certainty,” as it fails to provide "definite notice of the offence charged” and does not protect against “subsequent prosecution for one of the several offences”).

. According to the majority, the dissent “fails to appreciate the distinction between a jury verdict on a charging document alleging in the conjunctive two alternative elements and a guilty plea.” Ante at 438. The majority draws this distinction on the basis of its theory that, when a defendant pleads guilty, he necessarily admits all allegations charged conjunctively. Notably, the majority identifies no authority that supports such a theory, which it has apparently created from whole cloth. Indeed, there is support for the opposite conclusion. See e.g., Malta-Espinoza v. Gonzales, 478 F.3d 1080, 1082 n. 3 (9th Cir. 2007) ("[A] plea of guilty admits only the elements of the charge necessary for a conviction.”); Orrari v. Gonzales, 419 F.3d 303, 308 n. 10 (5th Cir.2005) ("Indictments often allege conjunctively elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty.”). Furthermore, the majority's theory is incompatible with our Rhynes precedent and its underlying principles, as enunciated in Edwards v. United States, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), and United States v. Quicksey, 525 F.2d 337 (4th Cir.1975). See Rhynes, 206 F.3d at 379-81.

. Indeed, the district court had no opportunity to consider the state charging documents, nor did the parties have the opportunity to object to their validity or argue their implications. Thus, to the extent the propriety of treating Vann’s convictions as qualifying ACCA violent felonies depends on the charging documents, the district court should consider those materials in the first instance. See, e.g., United States v. Alston, 611 F.3d 219, 225 (4th Cir.2010) (recognizing that "sentencing court” conducts ACCA analysis).

. The Indecent Liberties Statute does not involve only adult-child behavior, nor does it implicate the parent-child relationship — a context in which North Carolina permits an inference of constructive force. See Etheridge, 352 S.E.2d at 681 (inferring lack of consent, in context of second-degree sexual offense by father, from parent-child relationship); State v. Hardy, 104 N.C.App. 226, 409 S.E.2d 96, 99 (1991) (same; second-degree rape by stepfather); cf. United States v. Pierce, 278 F.3d 282, 290 (4th Cir.2002). Instead, the Statute proscribes behavior between teenagers (e.g., individuals aged nineteen and fourteen) as well as between teenagers and preteens (e.g., those aged sixteen and eleven) and between young adults and teenagers (e.g., people aged twenty and fifteen).

. In this regard, the majority errs in comparing the Statute to Vermont’s sexual assault of a child statute, which specifically requires sexual relations. See United States v. Daye, 571 F.3d 225 (2d Cir.2009); see also United States v. McDonald, 592 F.3d 808, 815 (7th Cir.2010) (explaining that Daye relied "largely on pre-Begay circuit precedents” and failed to "explain [its] generalization about the prevalence of the use of force in sex offenses”). A better guide for our analysis is United States v. Dennis, where the Tenth Circuit determined that Wyoming's indecent liberties statute does not qualify as a crime of violence, recognizing that it is not similar in degree of risk to the enumerated crimes because of the breadth of conduct it proscribes. See 551 F.3d 986, 989-90 (10th Cir.2008); see also McDonald, 592 F.3d at 815 (concluding that Wisconsin's second-degree sexual assault statute is not a crime of violence because its "breadth” “makes it difficult to conclude that the offense is typically 'violent and aggressive’ ”).