# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

March 25, 2011

No. 09-41064

**Lyle W. Cayce**
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

THOMAS GORE,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In this direct appeal Thomas Gore contends that his prior Texas conviction for conspiracy to commit aggravated robbery is not a violent felony within the meaning of the Armed Career Criminal Act (ACCA)[1] and that the district court erred in sentencing him as a career offender. We affirm.

## I

Gore pled guilty to possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g). The presentence report recommended that the

---

[1] 18 U.S.C. § 924(e).

No. 09-41064

district court sentence Gore as a career offender pursuant to the ACCA based on Gore's three prior state convictions, two for serious drug offenses and the other for conspiracy to commit aggravated robbery. Gore objected to the presentence report, arguing that conspiracy to commit aggravated robbery is not a violent felony under the ACCA and that he therefore should be sentenced within a Guidelines range of 33-41 months of imprisonment. The district court overruled the objection and sentenced Gore to 180 months of imprisonment. This appeal followed.

## II

We review de novo the district court's interpretation and application of a statute.[2] The ACCA provides that a defendant convicted for possession of a firearm is subject to a mandatory sentence of fifteen years' imprisonment if he has three prior convictions "for a violent felony or a serious drug offense, or both."[3] The ACCA defines "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year" that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[4]

It is undisputed that conspiracy to commit aggravated robbery is a crime that is punishable by imprisonment for a term exceeding one year.[5]

---

[2] *United States v. Harrimon*, 568 F.3d 531, 533 (5th Cir.), *cert. denied*, 130 S. Ct. 1015 (2009).

[3] 18 U.S.C. § 924(e)(1).

[4] *Id.* § 924(e)(2)(B).

[5] *See* TEX. PENAL CODE § 29.03(b) (defining aggravated robbery as a "felony of the first degree"); *id.* § 15.02(d) (defining criminal conspiracy as an offense that "is one category lower

No. 09-41064

**A**

Gore contends, and we agree, that under Texas law, a conviction for conspiracy to commit aggravated robbery does not have "as an element the use, attempted use, or threatened use of physical force against the person of another."[6]  Three Texas statutes must be considered to obtain the elements of the offense of conspiracy to commit aggravated robbery.  The first is the conspiracy statute, Texas Penal Code § 15.02, which provides that

> A person commits criminal conspiracy if, with intent that a felony be committed:
>
>> (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
>>
>> (2) he or one or more of them performs an overt act in pursuance of the agreement.[7]

When a conspiracy offense is at issue, our analysis includes "an examination of the elements of the target offense of the conspiracy conviction."[8]  Accordingly, we must consider the elements of the aggravated robbery statute and the statute upon which it expressly builds, the robbery statute. The Texas robbery statute, Texas Penal Code § 29.02, provides that

> A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

---

than the most serious felony that is the object of the conspiracy"); *id*. § 12.33(a) ("An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years.").

[6] 18 U.S.C. § 924(e)(2)(B)(i).

[7] TEX. PENAL CODE § 15.02(a).

[8] *United States v. Coleman*, 609 F.3d 699, 705 (5th Cir. 2010) (analyzing the elements of a conspiracy offense to determine whether the business practice exception to the federal felon in possession statute applied to defendant).

3

No. 09-41064

> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[9]

The Texas aggravated robbery statute, Texas Penal Code § 29.03, provides that

> A person commits an offense when he commits robbery as defined in Section 29.02, and he:
>
> > (1) causes serious bodily injury to another;
> >
> > (2) uses or exhibits a deadly weapon; or
> >
> > (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
> >
> > > (A) 65 years of age or older; or
> > >
> > > (B) a disabled person.[10]

A factfinder could convict a defendant of conspiracy to commit aggravated robbery by concluding that there was an agreement to (1) commit robbery and (2) engage in one or more of the acts enumerated in the aggravated robbery statute, without finding that physical force against the person of another was actually used or that there was an attempted or threatened use of such force.[11] Accordingly, conspiracy to commit aggravated robbery does not come within the definition of "violent felony" in subsection (i) of 18 U.S.C. § 924(e)(2)(B).[12]

---

[9] TEX. PENAL CODE § 29.02(a).

[10] *Id.* § 29.03(a).

[11] *See, e.g., Thompson v. State*, 54 S.W.3d 88, 95 (Tex. App.—Tyler 2001, pet. denied) (concluding that the act of using deception to separate two intended robbery victims satisfied the overt-act requirement of a conspiracy to commit robbery).

[12] *See United States v. White*, 571 F.3d 365, 369 (4th Cir. 2009) (holding that a conviction under North Carolina law for conspiracy to commit robbery with a dangerous weapon "does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another'"), *cert. denied*, 130 S. Ct. 1140 (2010); *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992) (holding that a conviction under New Mexico law for conspiracy to commit armed robbery was not a violent felony within the meaning of

4

No. 09-41064

We respectfully disagree with the Third Circuit's reasoning in this regard. That court held that a conspiracy to commit robbery came within the "force" clause because Pennsylvania law, under which the prior conviction was obtained, "requires that the crime that was the object of the conspiracy be defined for the jury" and therefore that "the elements of criminal conspiracy to commit robbery . . . subsume the elements of robbery."[13] In our view, this conclusion was incorrect. "[A]n element of a crime is a fact that must be proven beyond a reasonable doubt to obtain conviction."[14] The state of Pennsylvania could obtain a conviction of conspiracy without proving beyond a reasonable doubt that the defendant committed the crime that was the conspiracy's object.

## B

The primary question presented by this appeal is whether a conviction under Texas law for conspiracy to commit aggravated robbery is within what many courts have called the "residual clause"[15] of the definition of "violent felony," which is the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" that follows the enumerated offenses (burglary, arson, extortion, or an offense that involves use of explosives). Gore's first contention is that applying the familiar "categorical"[16] or "modified

§ 924(e)(2)(B)(i) after examining the elements of the New Mexico offense).

[13] *United States v. Preston*, 910 F.2d 81, 86 (3d Cir. 1990).

[14] *United States v. Villegas-Hernandez*, 468 F.3d 874, 881 (5th Cir. 2006) (citation and internal quotation marks omitted).

[15] *See, e.g., Johnson v. United States*, __ U.S. __, 130 S. Ct. 1265, 1274 (2010); *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687, 689 (2009); *United States v. Davis*, 487 F.3d 282, 285 (5th Cir. 2007).

[16] *See, e.g., James v. United States*, 550 U.S. 192, 201-02 (2007) (determining whether "attempted burglary, as defined by Florida law, is an offense that 'involves conduct that presents a serious potential risk of physical injury to another'" by "employ[ing] the 'categorical

categorical" approach,[17] rather than considering the actual conduct underlying his prior conviction, compels the conclusion that the statutes defining conspiracy to commit aggravated robbery are over inclusive in that they include conduct that would constitute a "violent felony" and conduct that would not. Gore contends that his prior conviction did not require him to commit an overt act, threaten an individual, or possess a firearm in the commission of the offense.

The only document pertaining to Gore's prior conviction in our record is the indictment. Gore correctly observes that we cannot deduce from the indictment whether his conviction was for a conspiracy to commit conduct described in subsection (a)(3) of the Texas aggravated robbery statute or another subsection of that statute.[18] Gore, Sara Gore, and Ronald Robinette were charged with "intentionally and knowingly with intent that the felony offense of aggravated robbery be committed, agree[ing] among themselves and with one another that [Robinette] would engage in conduct that would constitute the offense of aggravated robbery." The indictment further alleged that Robinette, not Gore, "performed an overt act in pursuance of that agreement," which

---

approach,'" that is, considering "whether *the elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender"); *Taylor v. United States*, 495 U.S. 575, 598, 602 (1990) (construing the ACCA to mean that enumerated offenses were intended by Congress to be given their "generic, contemporary meaning" and that this approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense"; "[t]his categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the] generic [offense]").

[17] *See, e.g., Johnson*, 130 S. Ct. at 1273 ("When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." (internal citation omitted)).

[18] *See* TEX. PENAL CODE § 29.03.

included "intentionally and knowingly" placing a woman "in fear of imminent bodily injury and death by using and displaying a deadly weapon, namely a firearm," while committing theft of money from her. The indictment does not charge that the conspiracy specifically contemplated that Robinette would use or exhibit a firearm to place the intended victim in fear of bodily injury or death.

Gore asserts that the least culpable[19] means of committing a conspiracy to commit aggravated robbery under Texas law is an agreement to commit robbery and threaten or place a person in fear of imminent bodily injury or death if that person is 65 years of age or older or is disabled.[20] Gore does not contend that Texas law can plausibly be construed to permit a conviction based on an agreement to recklessly[21] cause bodily injury to a person who is disabled or is 65 years or older while committing robbery.[22] Such a construction could arguably be the least culpable means of committing a conspiracy to commit aggravated robbery. While a very literal reading of the three pertinent statutes would allow a conviction based on such an agreement, we note that applying the categorical

---

[19] *See*, *e.g.*, *Johnson*, 130 S. Ct. at 1269 (analyzing whether a prior conviction for battery was a "violent felony" within the meaning of the ACCA by considering "the least of" three disjunctive means of committing the offense under a state statute and concluding "nothing in the record of . . . conviction permitted the District Court to conclude that it rested upon anything more than the least of these acts"); *United States v. Rosas-Pulido*, 526 F.3d 829, 831 (5th Cir. 2008) (explaining that in determining if a prior conviction was for a "crime of violence" within the meaning of the United States Sentencing Guidelines, "we 'consider each aspect of the offense's definition, including alternative bases for conviction, and determine whether the least culpable act constituting a violation of that statute constitutes [an enumerated offense]'" (brackets omitted) (quoting *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 315-16 (5th Cir. 2007)).

[20] *See* TEX. PENAL CODE § 29.03(a)(3).

[21] *See id*. § 29.02(a)(1) (defining "robbery," an element of aggravated robbery, to include "recklessly" causing bodily injury to another in the course of committing theft and with the intent to obtain or maintain control of the property).

[22] *See id*. § 29.03(a)(3) (requiring, in relevant part, "bodily injury" to a person who is disabled or 65 years or older in order for robbery to become aggravated robbery under this subsection).

No. 09-41064

approach does not require courts to conceive of every imaginable means by which a statute might possibly be violated.  The Supreme Court has explained that

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.[23]

The Supreme Court has held that a defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."[24]  Gore has not done so nor attempted to do so.  We therefore accept, with one modification, Gore's contention that the least culpable means of committing conspiracy to commit aggravated robbery under Texas law is to agree to 1) commit robbery and 2) threaten or place a person, who is 65 years of age or older or is disabled, in fear of imminent bodily injury or death.[25]  Gore attempts to ignore the requirement under Texas law that one or more of the conspirators "performs an overt act in pursuance of the agreement" as an element of a conviction for conspiracy.[26]  Gore could not have been convicted unless an overt act in pursuance of the conspiracy was performed.

We must determine, therefore, whether the least culpable means of committing aggravated robbery under Texas law, including an overt act by one

---

[23] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

[24] *Id.*

[25] *See* TEX. PENAL CODE § 29.03(a)(3).

[26] *See id.* § 15.02(a)(2).

8

No. 09-41064

of the conspirators, "involves conduct that presents a serious potential risk of physical injury to another."[27]

### III

Gore asserts that the residual clause of the ACCA categorically excludes conspiracy offenses, arguing that if Congress had intended for the residual clause to include conspiracies, it would have said so.[28] Gore relies upon our court's decision in *United States v. Martinez*, in which we held that a conviction under Texas law for attempted burglary was not a "violent felony" within the meaning of the ACCA.[29] Part of our reasoning in that case was that "if Congress

---

[27] 18 U.S.C. § 924(e)(2)(B)(ii).

[28] *See*, *e.g.*, 18 U.S.C. § 3559(c)(2)(F)(i), defining "serious violent felony":

(F) the term "serious violent felony" means–

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, *conspiracy*, or solicitation *to commit any of the above offenses*; and

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense . . . .

(emphasis added).

[29] 954 F.2d 1050, 1054 (5th Cir. 1992).

had wished to include attempted burglary as an offense warranting sentence enhancement, it easily could have done so."[30]   We observed that "[t]he Government . . . presents no argument from the legislative history that the Congress even considered including the crime of attempted burglary—or any other attempt—when it was considering § 924(e)."[31]

Our decision in *Martinez* issued more than a decade before the Supreme Court's decision in *James v. United States*, in which the Supreme Court held that attempted burglary as defined by Florida law was a "violent felony" within the meaning of the ACCA's residual clause.[32]   In *James*, the Court expressly rejected the argument that the ACCA categorically excludes "attempt" offenses from the residual clause.[33]   The Court first examined the text and structure of the ACCA.[34]   The Court reasoned that "the most relevant common attribute of the enumerated offenses of burglary, arson, extortion, and explosives use is not 'completion.'"[35]   Instead, these enumerated offenses "create significant risks of bodily injury or confrontation that might result in bodily injury."[36]   The Court concluded, "[n]othing in the statutory language supports the view that Congress intended to limit this category solely to completed offenses."[37]

The Supreme Court in *James* then examined the legislative history of the ACCA.   We will not repeat that discussion here, in the interest of brevity.   We

---

[30] *Id.* at 1053.

[31] *Id.*

[32] 550 U.S. 192, 195 (2007).

[33] *Id.* at 198.

[34] *Id.* at 198-200.

[35] *Id.* at 199.

[36] *Id.*

[37] *Id.* at 200.

note only that the Court recognized that in the deliberations leading up to the ACCA's adoption in 1984, the House rejected a version that would have imposed increased incarceration periods if there were two prior convictions for "'any robbery or burglary offense, *or a conspiracy or attempt to commit such an offense.*'"[38]  However, the Court then noted that Congress expanded the range of predicate offenses under the ACCA in 1986, and, therefore, the Court concluded that "Congress' rejection of express language including attempt offenses in the 1984 provision is not dispositive.  Congress did not consider, much less reject, any such language when it enacted the 1986 amendments."[39]  The Court held that what Congress "did consider, and ultimately adopted, was a broadly worded residual clause that does not by its terms exclude attempt offenses, and whose reach is broad enough to encompass at least some such offenses."[40]

The Supreme Court's reasoning with regard to attempted offenses and Congress' intent in adopting the residual clause applies with equal force to conspiracies.  The residual clause does not by its terms exclude all conspiracy offenses.  Its "reach is broad enough to encompass at least some such offenses."[41] We therefore reject Gore's argument to the contrary.

## IV

Gore contends that his prior offense of conspiring to commit aggravated robbery does not present "a serious potential risk of physical injury to another" because he did not commit any overt act, he did not threaten an individual or possess a firearm, and he was not in the vicinity of any robbery.  He also notes

---

[38] *Id.* (quoting S. 52, 98th Cong., 2d Sess., § 2 (1984)).

[39] *Id.* at 201.

[40] *Id.*

[41] *Id.*

that under Texas law, merely stating "I've got a gun" satisfies the requirement of threatening or placing a person in fear of imminent bodily injury or death.[42] Possession of a gun is not necessary.

In determining if a prior conviction is a "violent felony," we are guided by three relatively recent decisions of the Supreme Court construing and applying the ACCA's residual clause, *James v. United States*,[43] *Begay v. United States*,[44] and *Chambers v. United States*.[45] These precedents persuade us that Gore's conviction for conspiracy to commit aggravated robbery was a crime that presented a serious potential risk of physical injury to another.

In *James*, the Supreme Court concluded that in order to determine whether an offense, including an "attempt" offense, was a "violent felony" within the meaning of § 924(e)(2)(B)(ii)'s residual clause, courts consider "whether *the elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender."[46] The Court then observed that although the Florida attempt statute under consideration was broad, "the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary, requiring an 'overt act directed toward entering or remaining in a structure or conveyance.'"[47] "Mere preparation is not enough" under Florida law, the Supreme Court observed.[48] The Supreme Court then framed its inquiry under the residual

---

[42] *See United States v. Davis*, 487 F.3d 282, 286 (5th Cir. 2007).

[43] 550 U.S. 192 (2007).

[44] 553 U.S. 137 (2008).

[45] 555 U.S. 122, 129 S. Ct. 687 (2009).

[46] 550 U.S. at 202.

[47] *Id.* (quoting *Jones v. State*, 608 So. 2d 797, 799 (Fla. 1992)).

[48] *Id.*

No. 09-41064

clause in that case: "The pivotal question, then, is whether overt conduct directed toward unlawfully entering or remaining in a dwelling, with the intent to commit a felony therein, is 'conduct that presents a serious potential risk of physical injury to another.'"[49]

Texas law requires "an overt act in pursuance of the agreement" as an element of a conspiracy conviction.[50] This is similar to the Model Penal Code's requirement of "an overt act in pursuance of such conspiracy" except when the object of the conspiracy is to commit a felony in the first or second degree.[51] While we have found no Texas cases delineating the outer limits of what constitutes an overt act, Texas courts have held that the overt act need not itself be a criminal act but must take "the conspiracy beyond a mere meeting of the minds."[52] The overt act must be taken in pursuance of the "agreement," which must be that the conspirators agree, "with the intent that a felony be committed," that "they or one or more of them engage in conduct that would constitute the offense."[53] Applying the "least culpable," "modified categorical approach," Gore could not have been convicted under Texas law and his indictment unless he, with intent that a felony be committed, agreed that

---

[49] *Id.* at 203 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

[50] TEX. PENAL CODE § 15.02(a)(2).

[51] MODEL PENAL CODE § 5.03(5) ("Overt Act. No person may be convicted of conspiracy to commit a crime, other than a felony of the first or second degree, unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.").

[52] *McCann v. State*, 606 S.W.2d 897, 900 (Tex. Crim. App. 1980) (holding that an overt act in furtherance of a conspiracy to commit burglary of a habitation had been shown by evidence that the conspirators discussed robbing a safe located in a home, one of them drew a sketch of the home and the layout of the utility room in which the safe was located, they drove to the home and into its driveway, one of them pointed out a sliding glass door that was usually left open for the maid, and there were discussions about how to split the contents of the safe among the conspirators).

[53] TEX. PENAL CODE § 15.02(a).

13

Robinette would commit robbery and threaten or place a disabled person or a person 65 years of age or older in fear of imminent bodily injury or death, and unless Robinnette committed an overt act in furtherance of this agreement. We conclude that this is "conduct that presents a serious potential risk of physical injury to another."[54]

This court has previously recognized that the "defining feature of robbery under the Texas statute is the actual or threatened assaultive conduct."[55] We observed that "[t]o commit robbery, an individual must interact with the victim in order to cause bodily injury or place the victim in fear of it. Such interaction to take another's property creates a serious potential risk of a violent confrontation between the robber and the victim."[56] This is true "[e]ven when the robber has no weapon" because of "the very real possibility of confrontation between the robber and victim."[57]

There was no requirement that an actual confrontation occur to sustain Gore's conviction under Texas law. However, the Supreme Court's reasoning in *James* with respect to attempted burglary seems to us equally applicable to Gore's offense. The Supreme Court recognized that "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a

---

[54] 18 U.S.C. § 924(e)(2)(B)(ii).

[55] *United States v. Davis*, 487 F.3d 282, 286 (5th Cir. 2007) (citing *Purser v. State*, 902 S.W.2d 641, 647 (Tex. App.—El Paso 1995, pet. ref'd) (stating "[t]he gravamen of robbery is the assaultive conduct, and not the theft")).

[56] *Id.* (internal citation and footnote omitted).

[57] *Id.* at 287.

bystander—who comes to investigate."[58] The Supreme Court held in *James* that "[a]ttempted burglary poses the same kind of risk."[59]

We are cognizant that the decision in *James* cited our court's decision in *United States v. Martinez*,[60] in which we held that attempted burglary under Texas law did not involve a serious potential risk of bodily injury because the defendant was not required to have been in the vicinity of any building. However, the Supreme Court expressed no opinion as to whether that case was correctly decided and expressly declined to "consider whether the more attenuated conduct encompassed by such laws presents a potential risk of serious injury under ACCA."[61]  But other analysis in *James* weighs against Gore's argument that his prior crime presented no serious risk of injury to another.

In *James*, the Supreme Court looked to the United States Sentencing Commission's career offender enhancement as "evidence that a crime like attempted burglary poses a risk of violence similar to that presented by the completed offense."[62]  Noting that the career offender enhancement's "definition of a predicate 'crime of violence' closely tracks ACCA's definition of 'violent felony,'" the Supreme Court recognized that "[t]he Commission has determined that 'crime[s] of violence' . . . 'include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.'"[63] The Commission, the

---

[58] *James v. United States*, 550 U.S. 192, 203 (2007).

[59] *Id.*

[60] *Id.* at 205 n.4 (citing *United States v. Martinez*, 954 F.2d 1050, 1054 (5th Cir. 1992)).

[61] *Id.* at 206.

[62] *Id.* at 207.

[63] *Id.* at 206 (quoting U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a)(2) & cmt. n.1 (2006)).

Supreme Court observed, based this judgment on review of empirical sentencing data, and the Commission's judgment "presumably reflects an assessment that attempt crimes often pose a similar risk of injury as completed offenses."[64] While the Court was "not bound by the Sentencing Commission's conclusion," it was "further evidence" that attempted burglary presented a serious risk of injury to another person.[65] We likewise find the Commission's judgments in this area to be evidence that a conspiracy to commit aggravated robbery presents a risk of injury similar to that of aggravated robbery, even if the defendant was far from the victim at the time of the crime.

There is additional reasoning in *James* that is persuasive in the present case. It had been argued that courts "cannot treat [a crime] as an ACCA predicate offense unless *all* cases present" a serious risk of bodily injury.[66] This construction of the statute was rejected. "One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone—for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors."[67] This was immaterial because the "ACCA does not require metaphysical certainty. Rather, § 924(e)(2)(B)(ii)'s residual provision speaks in terms of a 'potential risk.' These are inherently probabilistic concepts."[68] The Supreme Court held that the approach championed by the defendant in *James* "misapprehends *Taylor*'s categorical approach. We do not view that approach as requiring that every conceivable factual offense covered by a statute must

---

[64] *Id.*

[65] *Id.* at 207.

[66] *Id.*

[67] *Id.*

[68] *Id.*

16

necessarily present a serious potential risk of injury before the offense can be deemed a violent felony."[69]  The Court gave two examples: "an attempted murder where the gun, unbeknownst to the shooter, had no bullets," and "an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments."[70] The Court explained, "[i]n both cases, the risk of physical injury to another approaches zero.  But that does not mean that the offenses of attempted murder or extortion are categorically nonviolent."[71]  The Court held, "[a]s long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of [the] residual provision."[72]

An agreement to commit aggravated robbery presents a serious potential risk of injury even if it is agreed that a conspirator other than the defendant whose conviction is at issue would actually carry out the aggravated robbery. The existence of the agreement itself presents a serious potential risk that the agreement will be carried forward.  As the Supreme Court has recognized in other contexts, a "conspiracy poses a 'threat to the public' over and above the threat of the commission of the relevant substantive crime—both because the 'combination in crime makes more likely the commission of other crimes' and because it 'decreases the probability that the individuals involved will depart from their path of criminality.'"[73]  This is particularly true when an overt act in

---

[69] *Id.* at 208.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 209.

[73] *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003) (brackets omitted) (quoting *Callanan v. United States*, 364 U.S. 587, 593-94 (1961)).

No. 09-41064

furtherance of the agreement is performed.  We need not consider whether an agreement without such an overt act would suffice for purposes of the ACCA.[74]

Our conclusion that Gore's prior conviction was for a "violent felony" is consistent with the Supreme Courts decisions in *Begay*[75] and *Chambers*,[76] which were decided subsequent to *James*.[77]  The Court held in *Begay* that a conviction for driving under the influence of alcohol was not a "violent felony" within the meaning of the residual clause.[78]  The Supreme Court explained in that case that the ACCA's residual provision does not encompass "*every* crime that 'presents a serious potential risk of physical injury to another.'"[79]  The Court construed the residual provision "as limiting the crimes that [the] clause . . . covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves,"[80] which are "burglary, arson, extortion, or crimes involving the use of explosives."[81]  The Court observed that each of the ACCA's enumerated predicate crimes "all typically involve purposeful, 'violent,' and

[74] *Compare United States v. White*, 571 F.3d 365, 368, 373 (4th Cir. 2009) (holding that conspiracy to commit robbery with a dangerous weapon in violation of North Carolina law was within the residual clause even though "the commission of an overt act is not an essential element of a North Carolina criminal conspiracy"), *cert. denied*, 130 S. Ct. 1140 (2010), *with United States v. Whitson*, 597 F.3d 1218, 1220, 1222-23 (11th Cir. 2010) (per curiam) (holding that a conspiracy to commit a "'strong arm' robbery" was not a crime of violence within the meaning of the career offender enhancement of United States Sentencing Guidelines § 4B1.1 because an overt act was not necessary for the conviction and "[n]o violence or aggression is associated with forming an agreement").

[75] *Begay v. United States*, 553 U.S. 137 (2008).

[76] *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009).

[77] *James v. United States*, 550 U.S. 192 (2007).

[78] *Begay*, 553 U.S. at 148.

[79] *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

[80] *Id.* at 143 (discussing 18 U.S.C. § 924(e)(2)(B)).

[81] 18 U.S.C. § 924(e)(2)(B)(ii).

'aggressive' conduct."[82]   In *Chambers*, the Supreme Court held that failure to report to a penal institution for incarceration was not a violent felony because "[c]onceptually speaking, the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct" associated with the enumerated offenses.[83]   The Court also held that an analysis of such crimes by the United States Sentencing Commission, which found no instances of violence during the commission of the offenses or later apprehension, "strongly supports the intuitive belief that failure to report does not involve a serious potential risk of physical injury."[84]

By contrast, the crime of conspiracy to commit aggravated robbery is similar in kind as well as degree of risk posed to burglary, arson, extortion, or crimes involving the use of explosives.  The risk typically posed by the least culpable means of committing conspiracy to commit aggravated robbery under Texas law is that a victim will be confronted by the assaulter in an attempt to take property from the victim by means of bodily injury or threatening or placing another at risk of imminent bodily injury or death.  The degree of risk is at least as great as that posed by burglary or extortion,[85] and the kind of risk is similar. An agreement that another will commit aggravated robbery is purposeful because it is made with intent that the crime be committed.  It is violent because it contemplates a physical assault or threatened assault against another person. The fact that the agreement contemplates that a conspirator other than the

---

[82] *Begay*, 553 U.S. at 144-45 (quoting *Begay v. United States*, 470 F.3d 964, 980 (10th Cir. 2006) (MCCONNELL, J., dissenting)).

[83] *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687, 692 (2009).

[84] *Id.*

[85] *See Begay*, 553 U.S. at 154 (SCALIA, J., concurring in the judgment) ("For some crimes, the severity of the risk will be obvious.  Crimes like . . . conspiracy to commit a violent crime . . . certainly pose a more serious risk of physical injury to others than burglary." (internal citations omitted)).

convicted defendant is to carry out the assault does not make the offense any less violent. For the same reasons, an agreement to commit aggravated robbery is an aggressive act. It contemplates aggression toward another.

The Supreme Court's decision in *Begay* concluded that the ACCA's definition of "violent felony" is "conduct" that makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."[86] The Court observed that conduct encompassed within the enumerated offenses in § 924(e)(2)(B) and within the residual clause "focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun."[87] The Court explained, "an offender's criminal history is relevant to . . . the kind or degree of danger the offender would pose were he to possess a gun."[88] Similarly, in *Chambers*, the Court reasoned that "[t]he question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'"[89]

It can be argued that someone like Gore, who agrees that his co-conspirator should actually carry out a violent crime, presents no risk of "pulling the trigger" were he to possess a gun because he is averse to himself engaging in assaultive conduct. In other words, it could be argued that such an offender has exhibited a lack of willingness to carry out his intended violent crimes personally. However, we do not think that such an argument can be squared with the language used in the ACCA or the Supreme Court's construction of it. As already discussed, the Supreme Court, in applying the ACCA, found

---

[86] *Id.* at 145 (majority opinion).

[87] *Id.* at 146.

[88] *Id.*

[89] *Chambers*, 129 S. Ct. at 692 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

No. 09-41064

persuasive the Sentencing Commission's inclusion of attempt and conspiracy offenses in the Commission's definition of a "crime of violence" for purposes of its career offender enhancement.[90]  We must also bear in mind that predicate acts under the ACCA can consist entirely of drug convictions in which force or threatened force or possession of a weapon played no part.[91]  We have previously held that choosing to "intentionally enter the highly dangerous drug distribution world" as a "seller—even if, hypothetically, the individual did not possess any drugs at that time—is the kind of self-identification as a potentially violent person that Congress was reaching by the ACCA."[92]  Congress intended for such recidivist criminals to receive harsher prison sentences if they are convicted of a gun crime under the ACCA.

Gore was convicted as an offender armed with a gun.  The question is whether Congress intended for increased incarceration to be imposed based on his career criminal status.  Even if an offender, such as Gore, agreed that another co-conspirator would commit the crime, his participation in a conspiracy to commit aggravated robbery—in which he must intend that the crime be carried out—serves as a self-identification as the type of person who, if later armed, is more likely to pull the trigger.  We certainly cannot say that an offender such as Gore is *unlikely* to pull the trigger simply because he did not personally carry out an aggravated robbery but instead agreed with another that such a violent act should be executed.  We bear in mind the Supreme Court's analysis of the residual clause:

> While there may be some attempted burglaries that do not present
> a serious potential risk of physical injury to another, the same is

---

[90] *See James v. United States*, 550 U.S. 192, 206 (2007) (quoting U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a)(2) (2006)).

[91] *See* 18 U.S.C. § 924(e).

[92] *United States v. Vickers*, 540 F.3d 356, 365-66 (5th Cir. 2008).

21

true of completed burglaries–which are explicitly covered by the statutory language and provide a baseline against which to measure the degree of risk that a nonenumerated offense must "otherwise" present in order to qualify.

. . . .

Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.[93]

We are satisfied that conspiracy to commit aggravated robbery, in the ordinary case, presents a serious risk of injury to another, similar in kind and degree to the enumerated offenses in § 924(e)(2)(B)(ii).

We are not the first circuit court to consider the issue. The Fourth Circuit has held that a prior conviction for conspiracy to commit robbery with a dangerous weapon under North Carolina law was a violent felony within the meaning of the ACCA's residual clause, even though North Carolina law did not require an overt act in furtherance of the conspiracy.[94] The Fourth Circuit reasoned that "[w]hen conspirators have formed a partnership in crime to achieve a violent objective, and when they intend to achieve that object, they have substantially increased the risk that their actions will result in serious physical harm to others."[95] The court also observed, and we agree, that "a previous conviction on the Conspiracy Offense reveals a callousness toward risk and an increased likelihood of future violent conduct by an offender—conduct that the ACCA was intended to interdict."[96] The Fourth Circuit further

---

[93] *James*, 550 U.S. at 208.

[94] *United States v. White*, 571 F.3d 365, 370-72 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1140 (2010).

[95] *Id.* at 371.

[96] *Id.*

recognized, as do we, that a conspiracy offense "cannot be divorced from its violent objective."[97]

The Tenth Circuit reached a different conclusion almost twenty years ago,[98] without the benefit of the Supreme Court's decisions in *James*,[99] *Begay*,[100] or *Chambers*.[101] The Tenth Circuit held that a conviction for conspiracy to commit armed robbery under New Mexico law was not a crime that presented a serious risk of potential injury within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii).[102] The court felt constrained by two prior decisions from that circuit that had held that a prior conviction for attempted burglary did not come within the scope of the residual clause.[103]

More recently, the Eleventh Circuit has held that a conviction for conspiracy to commit "'strong arm robbery'" was not a crime of violence within the meaning of section 4B1.1 of the Sentencing Guidelines.[104] The commission of an overt act was not an element of the conviction under the applicable state law.[105] The Eleventh Circuit held that the "simple act of agreeing" was not

---

[97] *Id.* at 372; *see also United States v. Chimurenga*, 760 F.2d 400, 403-04 (2d Cir. 1985) (holding that conspiracy to commit armed robbery was a crime of violence within the meaning of the residual clause of 18 U.S.C. § 3156(a)(4)).

[98] *United States v. King*, 979 F.2d 801, 804 (10th Cir. 1992).

[99] *James v. United States*, 550 U.S. 192 (2007).

[100] *Begay v. United States*, 553 U.S. 137 (2008).

[101] *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009).

[102] *King*, 979 F.2d at 804.

[103] *Id.* (citing *United States v. Permenter*, 969 F.2d 911 (10th Cir. 1992); *United States v. Strahl*, 958 F.2d 980 (10th Cir. 1992)).

[104] *United States v. Whitson*, 597 F.3d 1218, 1220, 1223 (11th Cir. 2010) (per curiam).

[105] *Id.* at 1221.

violent or aggressive.[106]  That court concluded that "the *Begay* analysis requires us to separate [the conspiracy and the target offense] and to examine *the conspiracy alone.*"[107]

We respectfully disagree with the Tenth Circuit's decision in *King*.[108]  With respect to the Eleventh Circuit's decision in *Whitson*, we do not read *Begay* as requiring us to consider only "the simple act of agreement" standing alone, divorced from the target or intended violent and aggressive offense.[109]

## V

Gore also contends that the district court erred when it determined that he was a career offender on the basis of an incorrect statute, Texas Penal Code § 7.02, Criminal Responsibility for Conduct of Another, rather than the Texas Conspiracy statute, Texas Penal Code § 15.02.  Because Gore raises this issue for the first time on appeal, we review for plain error.[110]  Under this standard, we may reverse if the defendant's substantial rights were affected by an obvious error.[111]  The district court's citation of the Texas statute pertaining to the "law of parties" rather than the conspiracy statute did not cause that court to reach an incorrect judgment or affect the sentence imposed.  The district court's result is the same as if it had cited the conspiracy statute.  Gore's substantial rights were not affected.

---

[106] *Id.* at 1222.

[107] *Id.* at 1223 (citing *Begay v. United States*, 553 U.S. 137 (2008)).

[108] *See United States v. King*, 979 F.2d 801 (10th Cir. 1992).

[109] *See* 597 F.3d at 1222, 1223.

[110] *United States v. Gonzales-Terrazas*, 529 F.3d 293, 296 (5th Cir. 2008).

[111] *Id.* (citations omitted).

No. 09-41064

**VI**

Relying on JUSTICE SCALIA's dissenting opinion in *James v. United States*,[112] Gore contends that the residual clause is unconstitutionally vague because the phrase "serious potential risk of physical injury to another" is so indefinite that it fails to put defendants on notice of what constitutes a violent felony. This argument was rejected by the Court's opinion in *James*.[113]

Gore also appears to argue that he was denied the Sixth Amendment right to a fair trial because the sentencing court was prohibited by the categorical approach from inquiring into the underlying facts of his prior conviction. In support of this argument, Gore cites JUSTICE THOMAS' concurring opinion in *Shepard v. United States*.[114] However, in that opinion, JUSTICE THOMAS opined that consultation of *any* documents under the categorical approach constitutes judicial fact-finding prohibited by *Apprendi v. New Jersey*.[115] This proposition does not support Gore's contention that the district court should have been allowed to consult the underlying facts. Gore's Sixth Amendment contention is not supported by this or any other precedent, and therefore any error cannot be plain, assuming, without deciding, that his argument was not waived.[116]

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[112] 550 U.S. 192, 229-30 (2007) (SCALIA, J., dissenting).

[113] *Id.* at 210 n.6 (majority opinion).

[114] 544 U.S. 13, 26-28 (2005) (THOMAS, J., concurring in part and concurring in the judgment).

[115] 530 U.S. 466 (2000).

[116] *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004) ("Issues not raised or inadequately briefed on appeal are waived.").

25

09-41064

HIGGINBOTHAM, Circuit Judge, specially concurring:

I join the panel opinion and here explain my view that the issues presented are best resolved by a straightforward application of the analytic approach developed by the Supreme Court in *Begay v. United States*.[1] *Begay* clarified the scope of the ACCA's Residual Clause by explaining that the four example crimes listed in 18 U.S.C. § 924(e)(2)(B)(ii)—burglary, arson, extortion, and crimes involving the use of explosives—"illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'"[2] The Court went on to hold that the Residual Clause only covers "crimes that are roughly similar, in *kind* as well as in *degree of risk posed*, to the examples themselves."[3]

I read *Begay* as instructing us to use a two-step inquiry to determine whether a particular offense falls within the ambit of the Residual Clause. First, we ask whether the offense in question is a similar kind of offense as the four example crimes. Next, we ask whether it poses a similar degree of risk. The answer to both questions is yes as to conspiracy to commit aggravated robbery as defined under Texas law.

As to the first step of that inquiry, the four example crimes demonstrate that the kind of crimes the Residual Clause targets are "'certain general categories of property crimes'" that invariably "'present[] a risk of injury to persons.'"[4] As the Court explained in *James v. United States*, "the most relevant

---

[1] 553 U.S. 137 (2008).

[2] *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

[3] *Id.* at 143 (emphasis added).

[4] *James v. United States*, 550 U.S. 192, 199 (2007) (quoting *Taylor v. United States*, 495 U.S. 575, 597 (1990)).

26

common attribute of the enumerated offenses of burglary, arson, extortion, and explosives use . . . is that all of these offenses, while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury."[5]  The reason the Residual Clause's four example crimes create a serious potential risk of physical injury to another is they "all typically involve purposeful, violent, and aggressive conduct."[6]

In this case, I conclude that conspiracy to commit aggravated robbery is similar in kind to the four example crimes.  I arrive at that conclusion in two steps.  First, aggravated robbery is quite plainly the kind of purposeful, violent, and aggressive property crime that entails a substantial risk of injury to its victim.  Robbery, by definition, is a violent form of theft.[7]  Indeed, the feature of robbery that distinguishes it from theft is—as the panel opinion aptly points out—actual or threatened assaultive conduct.  We have previously concluded that, as defined by Texas law, both robbery[8] and aggravated robbery[9] are violent

---

[5] *Id.*

[6] *Begay*, 553 U.S. at 144–45 (citation and internal quotation marks omitted).

[7] *See United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) ("[R]obbery 'may be thought of as aggravated larceny,' containing at least the elements of 'misappropriation of property under circumstances involving immediate danger to the person.'" (quoting WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3 intro., (d)(2) (2d ed. 2003) (brackets omitted))); MODEL PENAL CODE § 222.1 explanatory note (2001) ("Robbery is appropriately defined as a separate and serious offense because of the special elements of danger commonly associated with forcible theft from the person.").

[8] *See United States v. Davis*, 487 F.3d 282, 287 (5th Cir. 2007).

[9] *United States v. Guardiola*, 236 F. App'x 93, 95 (5th Cir. 2007) (per curiam) (unpublished) (citing *United States v. Muñoz*, 150 F.3d 401, 419 (5th Cir. 1998)).

felonies under the Residual Clause, and the statutory history of the ACCA supports that conclusion.[10]

In turn, conspiracy to commit aggravated robbery is the same kind of crime as aggravated robbery. A criminal conspiracy derives its nature from the crime whose commission is the conspiracy's object.[11] To ignore the target offense when determining a conspiracy's violent or nonviolent character would be to ignore the very aspect of the conspiracy that makes it criminal. It follows that a Texas conviction of conspiracy to commit aggravated robbery is similar in kind to the four offenses enumerated in § 924(e)(2)(B)(ii).

The second step asks whether conspiracy to commit aggravated robbery poses a degree of risk that is similar to the degree of risk posed by the four example crimes. To determine whether conspiracy to commit aggravated robbery creates a sufficiently serious potential risk of physical injury to another, we compare the risk it poses to the risk "posed by its closest analog among the enumerated offenses."[12] One of the enumerated offenses is extortion, which the Supreme Court has equated with robbery.[13] Thus, we need only determine

---

[10] *See James*, 550 U.S. at 200–01 (noting that the original version of the ACCA provided enhanced penalties based on two prior convictions for "any robbery or burglary offense" and that the 1986 amendment to the ACCA, which replaced that language with the Residual Clause, was "for the purpose of expanding the range of predicate offenses" (citations and internal quotation marks omitted)).

[11] *See* TEX. PENAL CODE § 15.02(d) (providing that a conspiracy offense is punishable as a felony that "is one category lower than the most serious felony that is the object of the conspiracy"); 15A C.J.S. *Conspiracy* § 98 ("Although criminalization of conspiracy punishes the inchoate offense by prosecuting the agreement itself, separating and stigmatizing jointly planned criminal activity prior to its completion, the crime of conspiracy is directed at the intended result of that agreement." (footnote omitted)).

[12] *James*, 550 U.S. at 203.

[13] *Compare Begay*, 553 U.S. at 145 (defining extortion as "'purposely' obtaining property of another through threat of, *e.g.*, inflicting 'bodily injury' (quoting MODEL PENAL CODE § 223.4 (1985))*, with* TEX. PENAL CODE § 29.02(a)(2) (defining robbery as "intentionally or knowingly threaten[ing] or plac[ing] another in fear of imminent bodily injury or death" while "in the course of committing theft . . . and with intent to obtain or maintain control of

whether conspiracy to commit aggravated robbery poses a similar degree of risk as aggravated robbery itself.

In my view, the United States Sentencing Commission has answered this question for us. The ACCA's definition of "violent felony" is identical in all respects material to this appeal to the definition of "crime of violence" found in § 4B1.2(a) of the Sentencing Guidelines. On numerous prior occasions we have "applied our holdings under the residual clause of the ACCA to analyze the definition of crimes of violence under § 4B1.2, and vice versa."[14] The Commission, "'which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between' a particular offense and 'the likelihood of accompanying violence.'"[15] And the Commission has defined the term "crime of violence" in § 4B1.2(a) to include the offense of conspiring to commit a crime of violence.[16]

When the Sentencing Guidelines use a term such as "conspiracy" to describe an offense, we employ a "'common sense approach'" based on the term's "'generic, contemporary meaning'" to determine whether it encompasses a particular state's version of that offense.[17] In my view, the generic, contemporary definition of a criminal conspiracy includes a requirement that at

---

the property").

[14] *United States v. Mohr*, 554 F.3d 604, 609 n.4 (5th Cir.) (collecting cases), *cert. denied*, 130 S. Ct. 56 (2009).

[15] *James*, 550 U.S. at 206 (quoting *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, C.J.)).

[16] U.S. SENTENCING GUIDELINES MANUAL § 4B1.2 cmt. n.1 (2010).

[17] *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011) (quoting *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008)).

least one of the conspirators take an overt act in furtherance of the agreement.[18] Because Texas's conspiracy statute requires an "overt act in pursuance of the agreement,"[19] a Texas conspiracy conviction falls within the realm of conspiracy offenses described in the commentary to § 4B1.2 of the Guidelines.  Thus, the reasoned, empirical judgment of the Sentencing Commission is that the Texas offense of conspiracy to commit aggravated robbery presents a sufficiently "serious potential risk of physical injury to another"[20] to be classified as a crime of violence under § 4B1.2.  The Commission's judgment weighs heavily in favor of concluding that conspiracy to commit aggravated robbery poses a similar degree of risk as the four enumerated offenses in § 924(e)(2)(B)(ii).[21]

For these reasons, as well as those laid out in the panel opinion, I conclude that the Texas offense of conspiracy to commit aggravated robbery is a violent felony within the meaning of the Residual Clause of 18 U.S.C.§ 924(e)(2)(B)(ii).

---

[18] "[A]bsent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law," *Taylor*, 495 at 591, and the federal conspiracy statute includes an overt-act requirement, *see* 18 U.S.C. § 371.  *Cf. Taylor*, 495 U.S. at 592 ("We think that 'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes.").

[19] TEX. PENAL CODE § 15.02(a)(2).  That feature of the Texas statute distinguishes this case from both *United States v. Whitson*, 597 F.3d 1218, 1223 (11th Cir. 2010) (per curiam) ("[W]e conclude that non-overt act conspiracy is not a section 4B1.1 'crime of violence.'"), and *United States v. King*, 979 F.2d 801, 802 (10th Cir. 1992) ("New Mexico law is clear that the overt act which constitutes the object of the conspiracy is no part of the crime of conspiracy . . . ." (citation, quotation marks, and brackets omitted)).

[20] U.S. SENTENCING GUIDELINES MANUAL§ 4B1.2(a)(2) (2010).

[21] Relying on the Commission's empirical research also avoids the variability and indeterminacy that would attend an alternate approach, as it eliminates the need to wrestle with the difficulty created by the fact that the Court has explicitly instructed us that the Residual Clause covers only those "crimes that are roughly similar . . . in degree of risk posed" to the four example crimes, *Begay*, 553 U.S. at 143, notwithstanding the fact that the four example crimes "'have little in common, most especially with respect to the level of risk of physical injury that they pose,'" *id.* (quoting *James*, 550 U.S. at 229 (Scalia, J., dissenting)).